JOSEPH T. BROWN, trustee, *vs.* LEWIS G. FARMER, executor,
& others.

Suffolk.    March 16, 1903. — September 2, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Devise and Legacy*, Construction.   *Words*, "Their natural life", "Their decease."

A will gave a fund to trustees to pay the income to the testator's three children
named "equally, annually, or semi annually, as they may prefer during the term
of their natural life and to divide after their decease the rest and residue of the
trust premises aforesaid under their charge equally among my children then
living, and the issue of any deceased child or children giving to the issue of any
deceased child the share to which the parent if living would have been entitled."
*Held*, that each of the testator's three children was entitled to the income of an
undivided third of the trust fund during his or her life, and that on the death of
each there was to be a distribution of one third of the principal among the chil-
dren of the testator then living and the issue of deceased children *per stirpes*,
including the issue of the beneficiary for life of the third of the fund being
distributed.

BILL IN EQUITY, filed February 26, 1903, by the trustee
under the seventh clause of the will of William Brown, late of
Boston, for instructions.

The case came on to be heard before *Morton*, J., who reserved
it upon the bill and answers for the consideration of the full
court, such disposition to be made thereof as to the court should
seem meet.

*C. Hunneman*, for the trustee.

*R. A. Jackson*, for Henry Howard Brown.

*Roland Gray*, for Rachel M. Sedgwick and others.

*J. K. Berry*, for Thomas Earle White and another.

*H. H. Darling*, guardian *ad litem* for Thomas Earle White, Jr.

LORING, J.   William Brown died leaving a wife and two
daughters, Mrs. Parker and Mrs. Griffith, and a son, Henry
Howard Brown.   After giving a pecuniary legacy to each child,
he gave the residue of his estate to his wife for life, and on her
death, by the seventh clause now in question, he bequeathed
$180,000 in trust and the residue equally among his three chil-
dren.   His estate amounted to about $400,000.

The trust created by the seventh clause is as follows: "Seventh. At the decease of my wife I give and bequeath to Joseph T. Brown of Boston and Henry A. Church of West Roxbury and to the survivor of them his heirs and assigns forever as joint tenants and not as tenants in common, in trust nevertheless for the uses and purposes herein specified to wit: — The sum of one hundred and eighty thousand dollars to hold and to take charge of the same to collect the rents incomes interest and profits thereof and after deducting all reasonable and proper charges and expenses, to pay over the said rents incomes interest and profits to my children Lucy Josephine Parker — Olivia Howard Griffith and Henry Howard Brown equally, annually, or semi annually, as they may prefer during the term of their natural life and to divide after their decease the rest and residue of the trust premises aforesaid under their charge equally among my children then living, and the issue of any deceased child or children giving to the issue of any deceased child the share to which the parent if living would have been entitled."

The widow of the testator has since died, the trust provided for by the seventh clause was duly created, and the plaintiff is now the trustee under it. Mrs. Parker died in 1902, without issue. Mrs. Griffith is a widow with three children and no grandchildren, and the son, Henry Howard Brown, is alive and has a wife and a married daughter, who, with her husband, Thomas Earle White, and a child, Thomas Earle White, Jr., are also alive.

The clause in question is obscure, and in no event can receive a construction which is altogether satisfactory.

Where property is given to several for life and then over at their decease, it has been held in some cases to go over together on the death of the survivor, and in other cases to be distributed piecemeal on the respective deaths of the life tenants.

Where the gift over was a gift *per capita*, it was held in *Loring* v. *Coolidge*, 99 Mass. 191, that the words "at their death" took the fund over as a whole on the death of the survivor, and conversely in *Dole* v. *Keyes*, 143 Mass. 237, it was held that where the life tenancy lasted until the death of the survivor the gift over was a gift *per capita*. But on the contrary, where the gift over is to the issue of the life tenants *per stirpes*, the words

"at their decease" have been construed to be taken distributively and to mean that the stock of each life tenant takes on the death of its ancestor. *Gardiner* v. *Savage*, 182 Mass. 521, following the English cases there cited, and those cited in *Loring* v. *Coolidge*, 99 Mass. 191, 192, to which may be added *Waldron* v. *Boulter*, 22 Beav. 284, and *In re Lavernick's estate*, 18 Jur. 304.

These are general rules of construction. The question in each case is what was the intention of the testator, and this intention is to be gathered from the particular provisions and the general scheme of the will, having in mind the general rules of construction as aids.

In the case at bar the general scheme of the will was equality among the testator's children. He gave each child $10,000 and an equal share of the residue, and in addition he provided against the possible improvidence of his children by putting in trust the $180,000 in question.

In the clause in question it is provided that the "children then living" of the testator are to share in the distribution when it takes place. That negatives the fund being kept together for the joint lives of the three life tenants. Again it is provided that the income is to be paid to the three "during the term of their natural life," and that the distribution is to be made "after their decease." That negatives the distribution being made on the death of the first life tenant to die. The use of the word "life" in the singular, if significant, tends to show that the testator was thinking of the life of each, and to make it probable that he used the words "at their decease" in a similar sense.

We have been asked by Mrs. White to construe the words "after their decease" to mean after their decease without issue; and by the guardian *ad litem* of Thomas Earle White, Jr. to construe the clause "equally among my children then living, and the issue of any deceased child or children giving to the issue of any deceased child the share to which the parent if living would have been entitled," to mean "among my issue then living, such issue to take according to the stocks," or that the gift to and among "my children" should be construed to and among "the children of my children." But we cannot do that. To do so

would be to guess at what the testator may have meant instead of construing the words which he used.

Counsel for the son Henry Howard Brown have argued that the thing to be divided "after their decease" is the "rest and residue of the trust premises aforesaid," and that that provision is not consistent with a distribution of one third on the decease of the first life tenant. But little weight can be given to the words "rest and residue" in any event. If the provision "after their decease" is not taken distributively, the words "rest and residue" can have no effect because there would be in that contingency but one distribution, and that one a distribution of the whole, either on the death of the first or the last of the three life tenants. If the words "after their decease" are taken distributively, these words have a meaning when applied to the second and third distributions, although they have no meaning in connection with the first.

The clause "giving to the issue of any deceased child the share to which the parent if living would have been entitled," is on its face absurd when applied to the issue of the life tenant on whose death a distribution takes place of the share, to the income of which the life tenant was entitled during his life. But when applied to the issue of a pre-deceased life tenant on the distribution of the share of the second or last life tenant (speaking of a life tenant's share in the sense stated above) it is intelligible. And if it is taken to mean that the distribution among issue shall be *per stirpes* in all cases, it is intelligible in all connections.

Looking at the clause as a whole, and to the general scheme of the will, and bearing in mind the general rules of construction already established in this connection, we are of opinion that each of the three children became entitled to the income of an undivided third of the trust fund during their respective lives, that on the death of each life tenant there is to be a distribution of the principal of the third to the income of which that life tenant was entitled during his or her life, and that that third is to be then distributed among the children of the testator then living and the issue of deceased children including the issue of the life tenant whose share (in the sense stated above) is being distributed, such issue taking *per stirpes*. The objection to this construction is the treatment which is given by it to the

issue of the life tenant whose share is being distributed, if that life tenant dies leaving issue. The general scheme of the testator is to treat the three children and their issue equally. And yet by this construction the issue who have had the misfortune to lose their ancestor have the added misfortune of seeing two thirds of the principal of his share go to the other two life tenants or those representing them *per stirpes*. The answer is that the representatives of the life tenant in question will get an equal amount from the other two shares when they are distributed, and a more equal provision is made for grandchildren than there would be made for them if we were to hold that the whole trust fund is to be kept until the death of the last surviving tenant; for under that construction it would have to be held that the income went to the surviving children of the testator until the distribution was made, leaving the children of deceased children of the testator unprovided for until then. And although a distribution of the whole on the death of the first life tenant who dies would insure equality, yet we do not feel at liberty to adopt that construction of the clause in view of the fact that the distribution is "after their decease," and the trust is to last " during the term of their [the life tenants'] natural life."

*Decree accordingly.*