## CUTTING *v.* CUTTING and others.

*(Circuit Court, D. Oregon.*  March 29, 1881.)

1. GRANT TO CHILDREN UNDER SECTION 4 OF THE DONATION ACT.

Upon the death of a married settler, under section 4 of the donation act, (9 St. 497,) before receiving a patent for the donation, and without having exercised the power to sell or devise the same, his interest therein is granted to his widow and children or heirs, and they take as the direct donees of the United States, and not by descent from such settler; and therefore the property cannot be sold by the administrator to pay his debts.

2. CHILDREN.

The word "children," as used in section 4 of the donation act, includes grandchildren; so that the children of a deceased child are entitled by right of representation to a child's part in the donation occupied thereunder by their grandparents.

3. CHILDREN OR HEIRS.

The grant of the interest of a deceased settler in the donation to his "children or heirs," as provided in section 4 of the donation act, takes effect in favor of the children first, and to the heirs only in default of children.

4. HEIRS OF A DECEASED SETTLER.

The heirs of a deceased settler, under section 4, are such persons as the local law—the law of Oregon—makes his heirs.

**5. PATENT TO THE HEIRS OF A DECEASED SETTLER.**

    A patent to the heirs of a deceased settler, under said section 4, presupposes that it was found in the land department that such settlers left no children, and the contrary cannot be shown to affect the patent in an action at law.

Action to Recover Real Property.

*J. H. Reed* and *Hugh T. Bingham,* for plaintiff.

*W. Cary Johnson,* for defendants.

DEADY, D. J.   This action is brought by the plaintiff, a citizen of California, against the defendants, David Cutting, Orin Cutting, and G. J. Trullinger, citizens of Oregon, to recover the possession of an undivided one-fifth of the north half of the donation of Charles Cutting and Abigail, his wife, the same being claims numbered 47 and 52, and parts of sections 5 and 6 in township 4 S., range 2 E., and sections 1 and 2 in township 5 S., of the same range, and situated in the county of Clackamas.

The defendants David and Orin Cutting deny the allegations of the complaint, and allege that they are the owners in fee of the premises, except 116 acres thereof.  The defendant Trullinger makes the like denials, and alleges that he is such owner of the said 116 acres.

By the stipulation of the parties the case is submitted to the court upon an agreed state of facts, which is to stand and be taken for the special verdict of a jury.  From this it appears that Charles Cutting settled upon the claims aforesaid on April 11, 1849, and on May 3, 1864, duly proved his residence and cultivation thereon, as provided in the donation act of September 27, 1850, (9 St. 497,) from June 20, 1850, until July 10, 1854; but did not then, nor thereafter, pay the fee required by law for the patent certificate, and died thereon, intestate, in the year 1868; that on February 28, 1870, upon the application of the administrator of said Charles Cutting, and upon the payment by him of the necessary fee therefor, a patent certificate for said donation was issued to said Abigail, the widow of said Charles Cutting, and to the "*heirs at law*" of the latter—the south half to said Abigail and the north half to said heirs; and that after-

wards, on May 5, 1875, a patent was issued by the United States for said donation accordingly; that said Charles Cutting left surviving him David, Charles, and Adelia, his children, and also Ira, the plaintiff herein, and Emma, the children of his son A. J. Cutting, who died in the year 1855; that on April 4, 1869, said Emma was married, and that said Ira has duly acquired whatever interest said Emma had in said donation; that said Trullinger's title to said 116 acres consists in a conveyance to him of the same by the administrator aforesaid, in pursuance of a sale by him upon the authority of an order of the county court of said county to pay the debts of his intestate, and that the proceedings in which said order and sale were made were due and regular, except that said Emma was not served with any citation or process therein; and that the defendants' interest in the premises is, as alleged in their respective answers, unless the said Ira and Emma are entitled to an undivided one-fifth thereof under the donation act aforesaid and the facts herein stated, "as *children* or *heirs* at law of said Charles Cutting, deceased."

The questions of law which arise upon these facts depend principally for their solution upon the proper construction of that portion of section 4 of the donation act which provides (9 St. 497) that in all cases where the donees thereunder, being married persons, "have complied with the provisions of this act, so as to entitle them to the grant as above provided, whether under the late provisional government of Oregon or since, and either shall have died before patent issues, the survivor and children or heirs of the deceased shall be entitled to the share or interest of the deceased in equal proportions, except where the deceased shall otherwise dispose of it by testament duly and properly executed according to the laws of Oregon."

The same section also contains a proviso declaring "void" "all future contracts * * * for the sale of the land," to which any person "may be entitled under this act, before he or they have received a patent therefor." But this proviso was repealed by section 2 of the act of July 17, 1855, (10 St. 306,) with the following qualification: *"Provided,* that no

sale shall be deemed valid unless the vendor shall have resided four years upon the land."

In *Barney* v. *Dolph*, 97 U. S. 652, Mr. Chief Justice Waite, speaking for the supreme court, held that this repeal of the prohibition to sell "was, under the circumstances, equivalent to an express grant of power to sell" after "the right to a patent had been fully secured;" and that such repeal did, by a necessary implication, "in cases where sales were made," repeal the above provision in section 4, giving the interest of the settler in the donation, in case of his death before patent, to his devisee, or wife and children, or heirs, saying: "Any provision in the act transferring the title of the settler, in case of his death before receiving the patent, to his child, heir, or devisee, is palpably inconsistent with an unlimited power to sell and convey the land. The two cannot stand together, and consequently the power of sale, which was the latest enactment, must prevail."

This construction of the act, however, leaves the interest of the settler who dies without a patent and without a sale to go or pass as originally provided—to his wife and children, or heirs, or devisee, as the case may be.

In *Hall* v. *Russell*, decided at the present term of the supreme court, Mr. Chief Justice Waite, speaking for the court, held that a settler upon the public lands under the donation act, prior to the completion of the four years' residence and cultivation required by the act, had only a possessory right thereto—that is, "a present right to occupy and maintain possession so as to acquire a complete right to the soil;" and that such settler was not qualified to take as a grantee under the act "until he had completed his four years of continued residence and cultivation," and performed "such other acts in the meantime as the statute required in order to protect his claim and keep it alive," such as giving "notice of the precise tract claimed," and proving "the commencement of the settlement and cultivation;" and that therefore a settler, dying before the completion of such residence and cultivation, had no estate in the land to dispose of by will or otherwise, but that under section 8 of the act his

possessory right went to his heirs, who, upon making proof of the settlement and death of their ancestor, took the land, not from their ancestor, but as the grantees and donees of the United States.

Under these decisions, as well as others of this court, it is clear that the interest of Charles Cutting in this donation, whatever it was, terminated with his life, and that the land was not thereafter liable for his debts or subject to sale by his administrator, but thereupon became and was the absolute property of his wife and children, as the direct donees and grantees of the United States. In other words, they took by purchase and not descent. *Fields* v. *Squires*, 1 Deady, 382; *Lamb* v. *Starr*, Id. 451.

The power of sale or devise which the settler had upon the completion of his residence and cultivation was never exercised, and therefore the survivor and children became entitled to the premises, as though such power had never existed.

Doubtless this power of sale ought to be construed to include the power to impose a charge or lien upon the premises, as by mortgage, which should bind the interest of the deceased in the donation to the extent of such lien, as in the case of an outright sale. But in the case of a settler dying without a patent, and leaving debts not secured upon his interest in the donation, the creditors have no claim upon the property as against the survivor and children, and therefore a sale by the administrator of the deceased settler is void. Therefore, the sale to Trullinger by Cutting's administrator gave the former no interest in the premises.

The next question to be considered is, can or ought the word "children," as used in this connection, be construed to include grandchildren? It is admitted that ordinarily and properly the former term does not include the latter; but it has been so construed in the case of wills where it appeared from the context that such was the intention of the testator. Bouv. Dict. *verba*, "Children." A power to appoint an estate to the use of *children* has been held not to include grandchildren. But Chancellor Kent, while admitting this to be

the settled rule in the construction of powers, does not hesitate to characterize it "as a very strict and harsh" one. 4 Kent, 345.

The principal authority cited by the defendants upon this point is *Adams* v. *Law*, 17 How. 417. In this case the question arose upon the construction of marriage articles to secure a jointure to the intended wife. The articles provided that in case of the death of the husband before the wife, she should have the use of certain real property during her life; but in case of her death before his, "leaving *issue* of the said marriage one or more *children then living*," upon the death of the husband the property was to go "to the child or children of said marriage" in fee-simple. The daughter and only child of this marriage intermarried with Lloyd N. Rogers, and died before her mother, leaving two children, who, upon the death of their grandparents,—the grandmother dying first,—claimed to be entitled to take under the articles as the representatives of their deceased mother.

The court below allowed the claim, but the supreme court held otherwise, saying: "The word 'issue' is a general term, which, if not qualified or explained, may be construed to include grandchildren as well as children. But the legal construction of the word 'children' accords with the popular signification, namely, as designating the immediate offspring;" but admitted that in the case of wills, where such appeared to have been the intention of the testator, grandchildren had been allowed to take under a devise "to my surviving children."

But the court was evidently influenced by the consideration that the principal object of the articles was to make a provision for the intended wife, and not the issue of the marriage, and also that the children to whom the estate was limited, upon the double contingency of the wife dying before the husband and their surviving them both, were "children then *living;*" that is, at the death of the mother and the father.

But in *Walton* v. *Cotton*, 19 How. 355, the court held that the word "children," in the act of congress of June 2, 1832,

and the several acts supplemental thereto, granting arrearages of pensions to certain officers of the revolution, and, in case of the death of any such officer before the date of the act, then to his widow, if there was one living, and, if not, to his *children,* included the grandchildren of a deceased pensioner, whether their parents died before or after the death of such pensioner, and that they were entitled to take their share of such pension as the representatives of their deceased parent.

In the course of the opinion of the court, Mr. Justice McLean says: "Should the word 'children,' as used in these statutes, be more restricted than when used in a will? In the construction of wills, unless there is something to control a different meaning, the word 'children' is often held to mean grandchildren. There is no argument that can be drawn from human sympathy to exclude grandchildren from the bounty, whether we look to the donors or the chief recipient. Congress, from high motives of policy, by granting pensions, alleviate, as far as they may, a class of men who suffered in the military service by the hardships they endured and the dangers they encountered. But to withhold any arrearage of this bounty from his grandchildren, who had the misfortune to be left orphans, and give it to his living children on his decease, would not seem to be a fit discrimination of national gratitude. * * * Congress has not named grandchildren in the acts, *but they are included in the equity of the statutes.* And the argument that the pension is a gratuity, and was intended to be personal, will apply as well to grandchildren as to children. * * * On a deliberate consideration of the above statutes we have come to the conclusion that the word 'children,' in the acts, embraces the grandchildren of the deceased pensioner, whether their parents died before or after his decease. And we think they are entitled, *per stirpes,* to a distributive share of the deceased parent."

This case is decidedly in point. The analogy between it and the case at bar is complete and instructive. The grant proffered by the donation act—particularly the fourth section

thereof—was a bounty to the parents in consideration of the timely and important services rendered by them in the occupation and settlement of the country; and in case of the death of either of them without having received a patent for the donation, the "benign policy" of the act was to secure this bounty, first to the immediate *family* of the deceased— his widow and "children;" and for lack of the latter, to her and his "heirs" generally. The children of the deceased child of Charles Cutting are certainly within the equity of the statute—more so, even, than were the grandchildren of the deceased pensioner; and there is nothing in the circumstances of the case or the reason of the provision which should exclude them, as the representatives of their parent, from participating in the bounty of the government. Owing to his comparative age and ability the deceased child may have largely shared with his father the journeyings, hardships, and labor which were involved in obtaining this donation, and in this respect may have been the most deserving of the family.

This is a beneficial statute—a measure of general utility and justice—particularly the clause under consideration, which provides for the disposition of the donation in case the settler dies before he has obtained a patent, and should therefore have a liberal and benign interpretation. Smith's Com. § 480. Such has been the spirit in which the act has been construed by the courts. Indeed, in *Silver* v. *Ladd,* 7 Wall. 224, the supreme court held that a single woman was included in the description of persons capable of receiving a donation under the fourth section. In delivering the opinion of the court, Mr. Justice Miller characterizes the act as "one of the most benevolent statutes of the government;" and, particularly in speaking of the construction of this fourth section, says: "Anything, therefore, which savors of narrowness or illiberality *in defining the class,* among those residing in the territory in those early days, and partaking of the hardships which the act was intended to reward, *who shall be entitled to its benefits,* is at variance with the manifest purpose of congress."

And according to a celebrated collector of the curious and interesting events and customs of past ages, this question was the subject of a judicial combat in the tenth century, when, the champion in behalf of the rights of the grandchildren proving victorious, "it was established by a perpetual decree that they should thenceforth share in the inheritance, together with their uncles." 1 D'Israeli's Curiosities of Literature, 233.

It appears, then, that both upon reason and authority, ancient and modern, that the word "children," as used in the clause under consideration, was intended by congress to include *all* the children of the deceased settler—the living ones actually and *per capita*, and the deceased ones by their legal representives and *per stirpes*. This being so, the plaintiff, as the representative of A. J. Cutting, a child of the deceased settler, and the grantee of his sister, Emma Cutting, is entitled to an undivided one-fifth of the north half of the donation. But, upon the face of the patent and the conveyance from his sister, it appears that the plaintiff is so entitled without reference to the question whether he and she would be included in a grant to the "children" of Charles Cutting, deceased. The patent grants the premises to the "heirs at law" of Charles Cutting, and ignores the right of the survivor (Abigail Cutting) altogether. In this respect it may be considered void upon its face, as it discloses the fact that there was a survivor to whom the act gave an equal part in the premises with an heir. *Davenport* v. *Lamb,* 13 Wall. 428; *Lamb* v. *Starr,* 1 Deady, 358.

The heirs, whoever they may be, can only take in default of children. The act substitutes them for children in case there are none of the latter. *Lamb* v. *Starr, supra;* 1 Red. on Wills, 486–7.

But whether the patent should issue to the children or heirs involved a question of fact to be determined by the land department before it was issued. If the evidence showed that the deceased settler left no children, then the patent should have been issued to his heirs, but not otherwise. The patent having been issued to the heirs, the presumption is that there

were no children. And although it appears from the agreed case that such is not the fact, yet this cannot affect the patent, which may not be avoided at law for matter *dehors* the record. *Sharp* v. *Stephens*, C. C. D. Or. Aug. 25, 1879, and cases there cited. In this case it was held that a patent could not be contradicted at law by showing that the wrong person was named therein, as the wife of the settler and grantee of one-half of the donation.

Who are the *heirs* of Charles Cutting is a matter to be determined solely by the local law—the law of Oregon. As was said by this court in *Lamb* v. *Starr, supra*, "the donation act does not prescribe who shall be considered the *heirs* of a deceased settler any more than it prescribes who shall be considered the *wife* of a settler. Both these are left to the local law—the law of Oregon. * * * Who would be entitled to claim as heir of the deceased would in all cases depend upon the law of Oregon at the time of the death; but persons claiming *as children*, are by the donation act preferred to those claiming simply as *heirs* by the local law."

By the law of this state, at and before the death of Charles Cutting, his children, including "the issue of any deceased child, by right of representation" were his heirs. Or. Laws, 547. The patent being to the heirs for the north half of the donation, gives the plaintiff and his sister, as the issue of A. J. Cutting, an equal interest therein with the surviving children of the deceased settler. And the patent having given the premises to the heirs without including the surviving widow, the interest of each heir would be an undivided one-fourth. But, as has been said, this omission of the widow from the grant in this respect is shown upon the face of the patent to be erroneous, and may therefore be disregarded here. The plaintiff is entitled, upon the patent and the agreed case, to recover an undivided one-fifth of the whole premises.

And upon this view of the matter it may have been unnecessary to pass upon the question whether grandchildren are included in the word "children" or not. But the argument of the case turned mainly upon this point, and counsel for

the defendant was urgent that it should be decided, so as to avoid the expense and delay of further litigation.

As it is, the court having determined that the grant to the children of the deceased settler, Cutting, included the children of his deceased son A. J., the word "heirs" in the patent is practically the exact synonym of the word "children" as used in the statute; and although the patent should have been issued to the children instead of the heirs, still the effect and operation given by it to the grant coincides with the true intent and meaning of the act.