## HALLOWELL v. COMMONS et al.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1914.)

No. 3923.

1. INDIANS (§ 13*)—LANDS—NATURE OF TITLE.

Under Act Aug. 7, 1882, c. 434, 22 Stat. 342, § 5, authorizing allotments of land to members of the Omaha Tribe of Indians, and section 6, providing that upon the approval of such allotments, the Secretary of the Interior shall cause patents to issue which shall be of the legal effect, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

declare that the United States will hold the land allotted for 25 years in trust for the sole use and benefit of the allottee, or, in case of his decease, of his heirs according to the laws of Nebraska, and that at the expiration of such period the United States will convey it by patent to such Indian, or his heirs, in fee discharged of the trust, by operation of the law and the preliminary patent the equitable interest subject to the restrictions contained in the statute, and possibly to the plenary power of Congress to enact legislation for the government of Indians, passed to the allottee, while the legal title was retained by the government for 25 years.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

2. INDIANS (§ 18*)—DESCENT—JURISDICTION OF COURTS.

Act June 25, 1910, c. 431, 36 Stat. 855, providing that when any Indian to whom an allotment of land has been made dies before the expiration of the trust period without a will, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and that his decision thereon shall be final and conclusive does not violate Const. art. 3, § 1, vesting the judicial power of the United States in one Supreme Court and such inferior courts as Congress may, from time to time, ordain and establish, and section 2, providing that the judicial power shall extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made under their authority; since, while the judicial power of the United States extends to cases in equity arising under the laws of the United States, the jurisdiction of a particular court created by Congress may be limited by Congress to a portion only of such judicial power, and that act, therefore, so far as it conflicts therewith, repealed Act Aug. 15, 1894, c. 290, 28 Stat. 305, providing that persons in whole or in part of Indian blood or descent entitled to an allotment, or claiming to be so entitled, or to have been unlawfully denied or excluded from any allotment or parcel of land, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper Circuit Court of the United States, and the amendatory act (Act Feb. 6, 1901, c. 217, 31 Stat. 760), authorizing the circuit courts to try and determine any such action, and providing that the judgment or decree of any such court in favor of any claimant shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allotted and approved by him.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

3. INDIANS (§ 18*)—DESCENT—JURISDICTION OF COURTS.

If, notwithstanding Act June 25, 1910, c. 431, 36 Stat. 855, providing that when any Indian to whom an allotment has been made dies before the expiration of the trust period without a will, the Secretary of the Interior shall ascertain the legal heirs of such decedent, and that his decision thereon shall be final and conclusive, the courts will interpose and protect the equities and rights of persons to lands, where such rights are infringed because of erroneous procedure of the officers of the Land Department either upon the facts or upon the law, they would not determine who were the heirs of a deceased allottee, where the Secretary of the Interior had not as yet passed upon that question.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

4. INDIANS (§ 18*)—LANDS—DESCENT—CHILDREN OF PLURAL MARRIAGES.

Congress not having prohibited plural marriages among tribal Indians, the children of polygamous marriages, made while the parties were members of an Indian tribe whose customs permitted polygamy, were lawful heirs of their father; the state laws regulating marriage not applying,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as members of an Indian tribe owe no allegiance to the state while in their tribal relation, and receive from the state no protection.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

Appeal from the District Court of the United States for the District of Nebraska; W. H. Munger, Judge.

Suit by Simeon Hallowell against John M. Commons, as Acting Indian Agent, etc., and another. From a decree dismissing the bill, complainant appeals. Affirmed.

Hiram Chase, of Pender, Neb., for appellant.

A. W. Lane, Asst. U. S. Atty., of Omaha, Neb. (F. S. Howell, U. S. Atty., of Omaha, Neb., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. Simeon Hallowell brought suit in equity against John M. Commons as Acting Indian Agent and Superintendent and Special Disbursing Agent for the Omaha Tribe of Indians of Nebraska, and Sarah Hallowell Walker. The defendants demurred to the bill on the grounds that the complainant was not entitled to the relief prayed for, and that the bill of complaint was without equity. The demurrer was sustained, and, the complainant electing to stand on his bill, it was by the court dismissed, and Mr. Hallowell appeals.

It appears from the bill that Jacob Hallowell was a member of the Omaha Tribe of Indians, and was allotted 80 acres of land under section 5, 22 Stats. 341. On December 29, 1884, the United States issued to him the preliminary patent as provided in section 6 of the same act, which is as follows:

"Sec. 6. That upon the approval of the allotments provided for in the preceding section by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indians to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Nebraska, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: Provided, that the law of descent and partition in force in the said state shall apply thereto after patents therefor have been executed and delivered."

In 1885 Jacob Hallowell died. He left a widow who died in 1886. There were left surviving him a number of persons who claim, or may claim, to be Jacob Hallowell's "heirs according to the laws of the state of Nebraska." At the time of the death of Jacob Hallowell he left a then living half-sister, Megretae Clay, who died in December, 1906, and the heirs of a deceased half-brother, Benjamin Hallowell.

When Megratae Clay died, she left, first, a grandson, Hiram Chase, 2d, now of Pender, Neb., who was the son of Hiram Chase, 1st, and his wife, the latter was the daughter of Megretae Clay, and second, a great granddaughter, Eileen Lawless, who was the daughter of Pauline Lawless, who was the daughter of Mrs. Hiram Chase, 1st, who was the daughter of the said Megretae Clay. Said Benjamin Hallowell, about 50 years ago, was married, and the appellant, Simeon Hallowell, is the sole fruit of such marriage. Thereafter, and prior to 1874, Benjamin Hallowell married an Omaha Indian, Mary Tyndall. There are no children surviving as the result of this marriage. In 1875, and while his wife, formerly Mary Tyndall was still living and still his wife, Benjamin Hallowell took a second plural and polygamous wife, Gradustawe Blackbird, an Omaha Indian woman, and she bore him one daughter on November 15, 1876, named Sarah Hallowell, now Sarah Hallowell Walker. It thus appears that this Sarah Hallowell Walker is the half-sister of the appellant. The appellant in his bill states that none of these parties, Sarah Hallowell Walker nor Hiram Chase, 2d, nor Eileen Lawless are entitled to participation in the rents of the said 80 acres. In his bill he prays:

(1) That it be decreed that under the terms of the sixth section of the act of Congress of August 7, 1882, 22 Stats. 341, the fee-simple estate of inheritance in and to the real estate herein described is retained by the United States of America but charged with an express trust of 25 years, without power of alienation for said beneficiaries.

(2) That it be decreed that the beneficiaries of said trust of 25 years are Jacob Hallowell, but in the event of his death during said trust of 25 years, then the residue and unexpired trust of 25 years inures and vests in the legal heirs according to the laws of Nebraska, of the said Jacob Hallowell, deceased, in the character of purchasers and grantees of the United States, by force and effect of the executory character of said trust of 25 years, and governed by the rules of law governing executory devises, uses, and trusts. created in wills and deeds, and not by law applicable to inheritable freehold estates of inheritances.

(3) That it be decreed that Simeon Hallowell, the complainant, being the nearest kin and only nephew and heir at law of the said Jacob Hallowell, deceased, is the sole and only beneficiary of said residue and unexpired trust of 25 years, and entitled to lease the same and receive all the rents and profits of the same without hindrance from any person whomsoever under the Acts of Congress and the rules and regulations of the Interior Department providing for the leasing of Indian lands and allotments.

(4) That it be decreed that Hiram Chase of Pender, Neb., has only an expectant right in and to said trust of 25 years to take effect and enjoyment and possession in the event that said Simeon Hallowell should die during the existence of said trust of 25 years.

(5) That it be decreed that Eileen Lawless, of Oklahoma, has only an expectant right in and to said trust of 25 years, to take effect and enjoyment and possession in the event of the extinction of the nephews and grandnephews and grandnieces of the said Jacob Hallowell.

(6) That it be decreed that Sarah Hallowell Walker is not a legal

heir of the said Jacob Hallowell, and is not entitled to be a beneficiary of said trust of 25 years.

(7) That an injunction issue as against John M. Commons, as Indian Agent, Superintendent, and Special Disbursing Agent, and Sarah Hallowell Walker, from preventing the complainant Simeon Hallowell from making a lease of said premises alone, and not to prevent him from receipting for all rent of said premises as provided by the laws of Congress and the rules and regulations of the Interior Department, and for general equitable relief.

The bill does not make Hiram Chase, 2d, a party because it is alleged he makes no claim adverse to the complainant, and the said Hiram Chase brings this suit as solicitor for the complainant, and Eileen Lawless was not made a party because she was beyond the jurisdiction and processes of the court. It is stated in the brief for appellant that Eileen Lawless is now deceased.

Notwithstanding the rule in Shelley's Case it is first contended that the words "his heirs according to the laws of the state of Nebraska," as used in section 6, 22 Stats. 341, and as also used in the preliminary patent, are words of purchase and not of limitation of the estate. Appellant cites Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829; McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237, and Cutting v. Cutting (C. C.) 6 Fed. 259.

[1] By operation of the law and the preliminary patent the equitable interest in this land, subject to the restrictions contained in the statute, and possibly to the plenary power of Congress to enact legislation for the government of the Indians, passed and the government retained the legal title for 25 years.

The District Court found against the appellant on this question, and we are inclined to think it was correct, as the law and the preliminary patent vested in the grantee the equitable title, but reserved the legal title in the government; the case is unlike the cases cited, but in view of other questions in this case, it is unnecessary to decide that question.

[2] The first question to decide is whether the court below had any jurisdiction of this case.

On June 25, 1910, Congress passed a law:

"That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive." 36 Stats. 855.

It is contended this law was clearly in conflict with the provisions of the Constitution:

First. "The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish." Article 3, § 1.

Second. "The judicial power shall extend to all cases in law and equity arising under this Constitution, the laws of the United States and treaties made or which shall be made under their authority." Article 3, § 2.

While it is true that the judicial power of the United States extends to all cases in equity arising under the laws of the United States, it

does not follow that the jurisdiction of any given court extends thereto. The Congress had power to confer such jurisdiction upon any court created by it. The original jurisdiction of the Supreme Court is defined by the Constitution by clause 2 of section 2 of article 3, and it is not pretended that such cases as this come within its provisions. It was entirely optional with Congress under section 1 of article 3 whether it would create any inferior courts at all. It has undoubted power to create such courts to exercise a portion only of the judicial power. For example, it has created the Court of Customs Appeals and the Commerce Court, and has had in contemplation the creation of a Court of Patent Appeals. Clearly these courts would not have jurisdiction of such cases as this. In other words, a thing may be within the judicial power of the United States, but not within the jurisdiction of any particular court created by Congress. It, therefore, becomes important to tell what was the original jurisdiction of the courts, state and national, over such cases as this before the legislation directly bearing on this case was enacted. The Supreme Court of the United States has said:

"As observed in the Smith Case, 194 U. S. 408 [24 Sup. Ct. 676, 48 L. Ed. 1039], prior to the passage of the act of 1894, 'the sole authority for settling disputes concerning allotments resided in the Secretary of the Interior.' This being settled, it follows that prior to the act of Congress of 1894 controversies necessarily involving a determination of the title, and incidentally of the right to the possession of Indian allotments while the same were held in trust by the United States, were not primarily cognizable by any court, either state or federal." McKay v. Kalyton, 204 U. S. 458, 468, 27 Sup. Ct. 346, 350 (51 L. Ed. 566).

In that situation Congress passed the law:

"That all persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto, in the proper Circuit Court of the United States." 28 Stats. 286, 305.

Under this statute or the amendatory act of February 6, 1901, 31 Stats. 760, the complainant might have claimed "to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress," but for the enactment of 36 Stats. 855, which took the jurisdiction away from the court which had existed since August 15, 1894, and vested it exclusively in the Secretary of the Interior. This act of June 25, 1910, was therefore, as applied to its subject-matter of lands, the legal title to which was in the government, valid, and repealed so much of the acts of 1894 and 1901 as conflicted therewith. Parr v. Colfax, 117 C. C. A. 48, 197 Fed. 302; Pel-Ata-Yakot v. United States (C. C.) 188 Fed. 387; Bond v. United States (C. C.) 181 Fed. 613.

[3] It is contended that:

"It is now definitely settled by a long list of cases that courts of justice will interpose and protect the equities and rights of persons to lands under the statutes, where such rights are infringed because of erroneous procedure

of the officers of the Land Department either upon the facts or upon the law."

[4] Aside from the fact that the act of June 25, 1910, provided that the decisions of the Secretary of the Interior shall be final and conclusive, which we think Congress had the power to do, as to lands the legal title to which the government held, it is not alleged in the bill that the Secretary of the Interior has as yet passed upon the question as to who are the heirs of Jacob Hallowell, according to the laws of the state of Nebraska, and the rule asserted would not give the courts any right to interfere until the matter had been passed upon by the Secretary of the Interior. This necessitates the affirmance of this case, but we may add that the government has never recognized any distinction as to the right of inheritance among the Indians between the children of the first wife and the children of a polygamous consort, where the Indians by their customs, while in a tribal state, permitted polygamy.

The United States Supreme Court has never directly passed upon this question. It was directly presented to that court in Jones v. Meehan, 175 U. S. 1, at page 26, 20 Sup. Ct. 1, at page 11 (44 L. Ed. 49). In that case it appears:

"On July 23 and 24, 1895, the defendant introduced testimony of Moose Dung the younger, and of other Indians, showing that his father had two wives, both living at the same time, and left six surviving descendants: Three children, (1) Moose Dung the younger, the eldest son by the first wife, (2) a daughter by the first wife, and (3) a daughter by the second wife; and three grandchildren, (4) a son of a deceased daughter by the first wife, (5) a daughter of a deceased daughter by the first wife, and (6) a son of a deceased son by the second wife."

The question was thus directly presented as to whether the children and grandchildren by the second wife were entitled to inherit. If the Supreme Court had thought the mere fact of their descent from the second wife defeated their claims, it could easily have said so. It apparently recognized their claims as heirs, but decided the case upon other grounds.

The Supreme Court of Michigan first had the question before it in Compo v. Jackson Iron Co., 50 Mich. 578, 16 N. W. 295. Judge Cooley in his opinion did not announce the rule contended for by appellant. The court then consisted of Graves, Chief Justice, and of Cooley, Campbell, and Sherwood, Justices. Judge Cooley delivered the opinion of the court, Sherwood, Justice, concurred, and Graves, Chief Justice, concurred in the result, but not in the opinion, while Campbell, Justice, dissented.

In substantially the same case (Kobogum v. Jackson Iron Co., 76 Mich. 498, 43 N. W. 602) the court unanimously sustained the right of inheritance of a child of a polygamous consort, holding that she could inherit from her father.

In Ortley v. Ross et al., 78 Neb. 339, 110 N. W. 982, the opinion says:

"Now, it is contended by appellants that, as the alleged marriage between the father and mother of the plaintiff was polygamous, it was neither valid in the state of Minnesota, where the parties then resided, nor in the state of Nebraska, to which they subsequently removed. This contention would be

well founded if this marriage had taken place between citizens of the United States in any state of the Union. But a different rule prevails with reference to the marriages of Indians, who are members of a tribe recognized and treated with as such by the United States government; for it has always been the policy of the general government to permit the Indian tribes as such to regulate their own domestic affairs, and to control the intercourse between the sexes by their own customs and usages. Consequently, when a member of an Indian tribe becomes a citizen of the United States and subject to its laws, by taking lands in severalty under the provisions of a treaty, as in the case at bar, a liberal rule is applied in determining the legitimacy of any offspring that he may have begotten under the customs and usages of the tribe to which he formerly belonged. The rule so applied is that marriages valid by the law governing both parties when made must be treated as valid everywhere."

If this is not an announcement that the children of a polygamous marriage, made while the parties were members of an Indian tribe, and in accordance with the customs and usages of the tribe, are lawful heirs of the father we do not understand it.

While decisions are cited that monogamous marriages according to the Indian custom are valid, we do not understand that any of them involved the question of the validity of a polygamous marriage according to Indian custom. We are therefore of the opinion that Sarah Hallowell Walker was the lawful heir of Benjamin Hallowell under the laws of Nebraska, and entitled equally with appellant to share in any inheritance from Jacob Hallowell, deceased.

The right of Sarah Hallowell Walker to be considered an heir according to the laws of Nebraska is in no wise dependent upon her parents having been married according to the laws of Nebraska. This Indian tribe at the date of the marriage of the mother of Sarah Hallowell Walker and Benjamin Hallowell was a semi-independent power, and, though dwelling within the state of Nebraska, it could make no laws affecting the customs among these Indians, and least of all could any laws on marriage of Nebraska have any effect among the members of such Indian tribe. They owed no allegiance to the state while in their tribal relation, and received from the state no protection. United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228.

Manifestly Nebraska laws had nothing to do with whether plural marriages should take place among them or not. Congress could have passed a law prohibiting plural marriages among tribal Indians if it saw fit, but it did not do so. They were left to be governed by their own tribal laws as to all social relations that might exist among them. The Indians were subject, while their tribal relations existed, to the laws only of Congress, and in the absence of such laws were left to be governed by their own laws and customs as to domestic and social practices including marriage, and whether they should practice monogamy or polygamy was left wholly to them. Under the laws of Nebraska we are inclined to think that Hiram Chase, 2d, and Eileen Lawless did not inherit any present interest in the equity in the land in question allotted to Jacob Hallowell. Douglas v. Cameron, 47 Neb. 358, 66 N. W. 430. But that was a question for the Secretary of the Interior to determine.

It follows this case must be affirmed.