S. W. KENNEY, ADMINISTRATOR, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 30 September, 1914.)

Railroads—Federal Employers' Liability Act—"Next of Kin"—"Dependent" —State Laws—Interpretation of Statutes.

   Within the intent of the Federal Employers' Liability Act, the meaning of the words "next of kin" depending upon the employee, who are given a right of action against a railroad company for his wrongful death, when he has no surviving widow or husband or children, is dependent upon the State law regulating inheritances; and in this State our statute, Revisal, sec. 137, controls, and thereunder the half-brothers of the deceased employee, an illegitimate child, may maintain the action when born in lawful wedlock of the same mother; and it is further held, in this case, that evidence of the tender age of such next of kin, being without estate, is sufficient to be submitted to the jury as being "dependent" upon the deceased employee.

WALKER, J., concurring; BROWN, J., dissenting; HOKE, J., concurring in the dissenting opinion.

APPEAL by defendant from *Connor, J.,* at May Term, 1914, of BERTIE.

*Winston & Matthews for plaintiff.*
*Murray Allen for defendant.*

CLARK, C. J. This is an action for wrongful death under the Federal employers' liability act by the administrator of an illegitimate child.

The Federal statute provides that such action shall be maintained "for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee." The mother of the intestate is dead, but left two sons and a daughter of tender age and dependent, born in wedlock.

The sole contention of the defendant requiring our consideration is that the expression "next of kin" as used in section 1 of this act is to be construed by the common law, disregarding the State law defining those words. Rev., 137, provides: "Illegitimate children, born of the same mother, shall be considered legitimate as between themselves and their representatives, and their personal estate shall be distributed in the same

manner as if they had been born in lawful wedlock. . And in the case of the death of any such child or his issue, without leaving issue, his estate shall be distributed among his mother and all such persons as would be his next of kin if all such children had been born in lawful wedlock." To same purport, Rev., 1556, Rule 10. *Powers v. Kite,* 83 N. C., 156; *McBryde v. Patterson,* 78 N. C., 412.

The Federal statute provides that this action may be brought in our courts. It is very clear that in North Carolina the two half-brothers and the sister of the intestate are his next of kin. It seems to us immaterial whether it were formerly otherwise in this State either by statute or the common law before any statute. The question is, Who was the "next of kin" at the time of such death in the State where the wrongful death occurred?

In *Hutchinson Investment Co. v. Caldwell,* 152 U. S., 65, the Court held: "In States whose laws permit illegitimate children, recognized by the father in his lifetime, to inherit from him, such children are 'heirs' within the meaning of U. S. Rev. Stat., sec. 2269, which provides that when a party entitled to claim the benefits of the preëmption laws of the United States dies before consummating his claim, his executor or administrator may do so, and the entry in such case shall be made in favor of his heirs, and the patent, when issued, inures to them as if their names had been specially mentioned."

In that case it was contended that the word "heirs" was used in the common-law sense. The Court said: "Undoubtedly the word 'heirs' was used as meaning, as at common law, those capable of inheriting; but it does not follow that the question as to who possessed that capability was thereby designed to be determined otherwise than by the law of the State, which was both the *situs* of the land and the domicile of the owner." It has been often held that there is no common law for the Federal courts. The contention that the next of kin must be the same in all the States is not in accordance with the intent of the act. Indeed, there could be no uniformity if that was desirable, for there is no common law in Louisiana, and the common law is much modified in some of the States which we acquired from Mexico and France, and on many subjects the rule of the common law has been held differently in the different States. This case cites *U. S. v. Fox,* 94 U. S., 315, and is cited *Moen v. Moen,* 16 S. D., 214.

In *Cutting v. Cutting,* 6 Fed., 268, where the act of Congress prescribed that the heirs of a married settler should receive a patent where he had not taken it out, it was held: "Who are the *heirs* of Charles Cutting is a matter to be determined by the local law—the law of Oregon—as is also the question who is his *wife.* Both these are left to the local law of Oregon," quoting from *Lamb v. Starr,* 1 Deady, 358:

"Who would be entitled to claim as heir (or wife) of the deceased would in all cases depend upon the law of Oregon at the time of the death."

The same ruling was made as to "next of kin" being governed by the law of the domicile in *McCool v. Smith,* 66 U. S. (1 Black), 459.

The object of the act of Congress was to permit a recovery for wrongful death or injuries on interstate railroads, and that the recóvery should go to the next of kin in the cases specified, the next of kin being determined by the law of the State in which the action is brought; for the status of the citizen, and the statute regulating descent and distribution, are purely State matters, with which Congress has no concern. By the reasoning in the case above cited the words "next of kin" are taken, like the word "heirs," as meaning those to whom the property would go; but who are the heirs and who are the next of kin are matters solely for State regulation.

The decision in *Taylor v. Taylor,* 232 U. S., 363, decided February, 1914, holds that the right of action given to the employee survives to his personal representative for the benefit of his parents only when there is no widow, and that the act of Congress prescribing what class are the beneficiaries, and the order in which they take, controls, though the State statute fixes a different order of succession. But there is nothing in this decision which militates against the holding in *Hutchinson v. Caldwell, supra,* that who are the "heirs" or the "next of kin" is regulated by State statute.

The evidence as to the tender age of the children and their being without estate was sufficient evidence to be submitted to the jury on the question of their being dependent. And the fact has been found by the jury, who evidently gave due weight to the evidence of the earning capacity of intestate, as may be inferred from the smallness of the verdict. The exception to evidence need not be discussed.

No error.

WALKER, J., concurring: It seems to me that this case is governed by *McCool v. Smith,* 1 Black (66 U. S.), 459, in which the question arose as to the law by which is to be determined who are the "next of kin" of a person, as those words were used in a Federal statute. The Court there held that the law of the domicile controlled, and not the common law; and in *Hutchinson v. Investment Co.,* 152 U. S., 65, relied on by plaintiff, it is said that in the *McCool case* the Court decided that the common law governed simply because the State of Illinois, where the parties were domiciled, had adopted the common law by statute, and, therefore, the term "next of kin" was construed by the local law, or law of the domicile, and that was the rule of the common law, as Illinois had then only the common law in force. She afterwards enacted a statute of

distributions. In the *Hutchinson case* the same rule was applied as to the meaning of the word "heirs," and the question was decided by the *lex loci rei sitœ*—the law of the State where the land was situated. In the cases cited by defendant and also in the dissenting opinion, the Court was referring to the common law as applicable, when deciding upon the legal rights of the parties—such, for instance, as the question of negligence, where there is no Federal statute defining those rights, or, rather, the principles by which they are to be determined. The Court, therefore, held in the *McCool case* that the "next of kin," as referred to in the Federal statute, are those who answer to that description under the State law where the parties are domiciled, and not by the common law, unless that be the law of the particular State.

BROWN, J., dissenting: 1. It is admitted that this action is brought under the Federal employers' liability act by the administrator of Beb Isaac Capehart, deceased, for the benefit of his next of kin. I admit that under the statute in this State it is not necessary to allege or prove who are the next of kin in order to recover for the negligent killing of a person. But the language of the Federal statute is different, and the action is brought by the personal representative of the decedent "for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee."

The right to recover damages for wrongful death is purely statutory, and did not exist at common law, and it follows that the provisions of the statute under which the particular action is brought must control it.

Under the Federal act it seems to be settled by the current of recent authority that the existence of beneficiaries, such as are named in the statute, must be pleaded and proved. Where a statute gives a right of action for death by wrongful act, if no such persons or class of persons exist as are described in the statute, as the beneficiary of the recovery, the action cannot be maintained. 13 Cyc., 335.

The liability of the defendant is made contingent upon the existence of one or more beneficiaries, or the fund recovered goes to the beneficiaries, not by virtue of the law of succession, but because it is given them by the statute. Therefore, if there is no beneficiary which meets the description of the statute, there is no right of action. *Melzner v. R. R.,* 127 Pac., 1002.

In *Illinois Central R. R. v. Doherty,* 155 S. W., p. 1121, the Court of Appeals of Kentucky distinguishes the Kentucky statute, which is very much like ours, from the Federal act, and holds that under the act of Congress, if there is no one for whom a recovery can be had, there can

be no recovery. This Federal act is supreme in all actions brought to recover for the death of an employee in interstate commerce, and supersedes all State statutes creating a right of action for death by wrongful act. *R. R. v. Birch,* 224 U. S., 547.

2. His Honor instructed the jury: "If the jury shall find from the evidence that Bob Isaac Capehart, Sills Hardy, Joe Hardy, and Nettie Hardy were all the children of the same mother, then I charge you that at the death of Bob Isaac Capehart the said Sills Hardy, Joe Hardy, and Nettie Hardy are next of kin of said Capehart, it being admitted that the mother was dead, that Bob Isaac Capehart was an illegitimate child, and that he left no wife or child surviving him, and the jury should answer this issue 'Yes.' "

I am of opinion that the words "next of kin," as used in the Federal act, are not to be defined by the various and differing statutes of the many States of this Union, but are to be construed in the light of the common law. It is not to be supposed that this act, intended for the benefit and protection of employees engaged in interstate commerce, should be administered differently in every State in the Union.

Mr. Doherty says: "It is inconceivable that the power of Congress to create a fund for the benefit of the widows and orphans of railroad employees, and to determine the beneficiaries of this fund or to make the personal representative trustee for its distribution in the manner set forth in the statute, is in any manner impaired or affected by the laws of a State governing the distribution of the estate of the deceased." Doherty Liability of Railroads to Interstate Employees, p. 241.

In its sphere the Federal act is complete, and in matters of substance it is not to be added to or changed by State regulations. In *Michigan Central R. R. v. Vreeland,* 33 Sup. Ct. Rep., 192, the late *Justice Lurton* says: "We may not piece out this act of Congress by resorting to the local statutes of the State of procedure or that of the injury. The act is one which relates to the liability of railroad companies engaged in interstate commerce to their employees while engaged in such commerce. The power of Congress to deal with the subject comes from its power to regulate commerce between the States."

It seems to be pretty well settled by the decisions of the Supreme Court of the United States that in the construction of the laws of Congress rules of the common law furnish the true guide. *Rice v. R. R.,* 66 U. S., 374; *U. S. v. Sanges,* 144 U. S., 311; *Charles River Bridge v. Warren Bridge,* 11 Peters, 420; *Standard Oil case,* 221 U. S., 1; *American Tobacco Co. case,* 221 U. S., 106.

"The principles of the common law are operative upon all interstate transactions except so far as they are modified by congressional enactment." *Western Union Tel. Co. v. Call Publishing Co.,* 181 U. S., 92.

In *S. A. L. Ry. v. Horton,* 34 Sup. Ct. Rep., 635, *Mr. Justice Pitney* says: "It is not to be conceived that, in enacting a general law for establishing and enforcing the responsibility of common carriers by railroad to their employees in interstate commerce, Congress intended to permit the legislatures of the several States to determine the effect of contributory negligence and assumption of risk, by enacting statutes for the safety of employees, since this would in effect relegate to State control two of the essential factors that determine the responsibility of the employer."

The learned judge further says that "The adoption of the opposite view would in effect leave the several State laws and not the act of Congress to control the subject-matter." See, also, *Southern Railway v. Crockett,* 34 Sup. Ct. Rep., 897.

I am unable to see anything in the case relied upon by the plaintiff and cited in the opinion of the Court, *Hutchinson Investment Co. v. Caldwell,* which militates against this position. In that case the Court was passing upon the rights of certain parties to preëmpt land, and it was in respect to local laws that the Court was speaking. The Court held, what is universally known, that in respect to the designation of heirs the matter is to be determined by the *situs* of the land and the domicile of the owner. The construction which the majority opinion gives to the Federal statute in this case is opposed to the decision of the Supreme Court in the recent case of *Taylor v. Taylor,* 34 Sup. Ct. Rep., 350, in which it is held that nothing in the State statute for the distribution of personal property can affect the right of the childless widow of an interstate railway employee, who was fatally injured while employed by the carrier in interstate commerce, to the entire net proceeds of a judgment for the resulting damages recovered by her as administratrix in an action against the carrier.

We think the elementary principles of statutory construction, applied to the act of Congress, compel the conclusion that in the use of the words "next of kin" Congress must have had in mind the well known meaning of those words according to the common law.

"It is a well settled principle that if a statute makes use of a word, the meaning of which is well known, and which has a definite sense at common law, it shall be received in that sense, unless for some reason it clearly appears that it was intended to use the word in a different signification." *S. v. Engle,* 21 N. J. Law, 360; *Adams v. Turrentine,* 30 N. C., 147.

"It is a sound rule that whenever a legislature in this country uses a term without defining it, which is well known in the English law, it must be understood in the sense of the English law." *McCool v. Smith,* 66 U. S., 459; *Kitchen v. Tyson,* 7 N. C., 314.

Any other construction of the act would bring disorder and confusion in its administration, as the laws of the State differ in so many particulars. In North Carolina illegitimate children, born of the same mother, by statutory enactment are rendered legitimate as between themselves. In Alabama one illegitimate child can inherit from another of the same mother; in Missouri he cannot. In Tennessee and Vermont legitimate children inherit from illegitimate children, but illegitimate children do not inherit from legitimate children of the same mother. In Pennsylvania illegitimate children inherit from the mother and the mother from the children, but the children cannot inherit from each other. In Kentucky, when an illegitimate child dies intestate without issue, leaving no mother surviving, the legitimate children of his mother cannot inherit his estate. In North Carolina they can.

If the laws of the States governing the distribution of personal property are to determine who are next of kin, then in the event the deceased was a resident of another State at the time of his death, our courts would have to look to the law of the domicile to determine for whose benefit the action can be maintained, because "the law of the decedent's domicile governs the distribution of his personal estate." *Smith v. Howard*, 41 Am. St. Rep., 537, and note; *Leak v. Gilchrist*, 13 N. C., 75; *Alvany v. Powell*, 55 N. C., 51; *Medley v. Dunlop*, 90 N. C., 527.

In the present case it appears that the deceased was a resident of Boykins, Va., at the time of his death, and we would have to look to the law of Virginia to determine whether an illegitimate child can leave next of kin as defined by the Federal act.

At common law the words "parent," "child," "next of kin," and words of similar import were held not to include illegitimates.

"By the rules of the common law, terms of kindred, when used in a statute, include only those who are legitimate, unless a different intention is clearly manifested." *McCool v. Smith,* 66 U. S., 459.

After stating this principle, the United States Supreme Court says: "This is conceded by the counsel for the defendant in error. The proposition is too clear to require either argument or authority to sustain it. The legal position of Alonzo Redman at the time of his death was what the common law made it. In the eye of the law he was *nullius filius.* He had neither father, mother, nor sister. He could neither take from nor transmit to those standing in such relations to him any estate by inheritance."

Prior to the enactment of Revisal, sec. 137, the courts of this State recognized the common-law rule that an illegitimate child can have no next of kin. In *Coor v. Starling,* 54 N. C., 243, *Chief Justice Nash* says: "Edwin Jones was a bastard, and by the common law no such consanguinity existed between him and his bastard brother as enabled the

latter or his issue to claim any portion of his estate, real or personal. A bastard can be heir to no one, nor can he have any heirs, but of his own body; for, being *nullius filius,* he is kin to no one."

It has been frequently held by the State courts in which the question has arisen that terms of kindred used in statutes based upon Lord Campbell's act relate exclusively to legitimate and not to illegitimate children.

In South Carolina the statute gives the right of action to the parent or parents. The Supreme Court of that State has held that "A mother cannot recover as sole beneficiary under Lord Campbell's act for the wrongful death of her illegitimate child." *McDonald v. R. R.,* 71 S. C., 352.

When the right of action for death by wrongful act is given to a "child" or "children" of decedent, it has been held by the Supreme Court of Georgia to mean legitimate child, and the mother of a bastard was denied the right to recover, notwithstanding statutes of the State of Georgia provided that "bastards may inherit from their mother and from each other, children of the same mother, in the same manner as if legitimate." *Robinson v. R. R.,* 117 Ga., 168.

In *R. R. v. Johnson,* 77 Miss., 727, the Mississippi Supreme Court says: "An illegitimate daughter cannot maintain an action for damages caused by the wrongful killing of another illegitimate daughter of the same mother, since our statute creating causes of action for the death of a person, like Lord Campbell's act, confers the right to sue only on legitimate relatives."

"The father of an illegitimate child has no right of action for the child's death under Rev. Stat., 1894, sec. 267, giving a father a right of action for the death of a 'child,' although the mother is dead and the child had been acknowledged by the father and had no guardian or next of kin except him." *McDonald v. R. R.,* 144 Ind., 459.

There is nothing in the act of Congress which indicates that illegitimate children should be regarded as legitimate as between themselves and should take as beneficiaries under the act.

I am, therefore, constrained to hold, upon the admitted facts, that this action cannot be maintained.

HOKE, J., concurs in this dissent.