NATHANIEL DOLE, trustee, *vs.* GEORGIANA KEYES & others.

Essex. Nov. 4, 1886. — Jan. 6, 1887. DEVENS, W. ALLEN, &
GARDNER, JJ., absent.

A testator, by his will, gave to his wife the income and improvement of his house
during her life, and charged his estate with her maintenance; and then provided
as follows: " All the rest and residue of my estate, real or personal, of every
name and nature, I give the income and the improvement of the same to my
children, to wit, J. and S., and at their decease the said real and personal estate
shall revert to their children, and also the above described estate given to my
beloved wife after her decease, to them and their heirs forever." *Held*, that the
limitation to the children of the testator's children created a vested remainder,
which opened to let in grandchildren born after the testator's death; and that
the grandchildren took *per capita*.

BILL IN EQUITY, by the trustee under the will of Moses Per-
ley, to obtain the instructions of the court as to the construction
of the will. The bill alleged the following facts:

Moses Perley died on May 25, 1857, leaving a will, which was
duly admitted to probate, and contained the following provisions:

"1st. After paying my just debts and funeral charges I give
and bequeath to my beloved wife, Nancy Perley, the income and
improvement of my house near Parker River Bridge in Newbury
aforesaid, during her natural life, and also a handsome maintain-
ance from my estate.

"2d. I give and bequeath to my son, John Perley, six hun-
dred dollars to him and his heirs forever.

"3d. All the rest and residue of my estate, real or personal,
of every name and nature, I give the income and the improve-
ment of the same to my children, to wit, John Perley and Sarah
Lambert, wife of George Lambert, and at their decease the said
real and personal estate shall revert to their children, and also
the above described estate given to my beloved wife after her
decease, to them and their heirs forever."

At the death of the testator, his wife, Nancy Perley, his
daughter, Sarah Lambert, wife of George Lambert, and his son,
John Perley, were all living. The wife, Nancy Perley, died soon
after the death of the testator, the daughter Sarah died on
March 1, 1865, and the son John died on June 26, 1885. George
Lambert is still living.

Sarah Lambert had five children, four of whom were born during the lifetime of the testator, and were living at the time of his death; namely, Hannah, born on August 24, 1845; Georgiana, born on June 12, 1849; Maria C., born on September 4, 1851; and Sarah P., born on March 26, 1855. One of said five children, named John, was born on December 19, 1857, after the death of the testator. Of said five children, John died on June 19, 1864, and Sarah P. died on February 8, 1868, both during their minority, unmarried and without issue; Maria C. married William Clement, and died on February 8, 1871, without issue, and her husband is still living; Hannah married Charles Nowell, and died on September 17, 1869, leaving one child, named Emma J. Nowell, born on October 31, 1867, who is now living. The husband of said Hannah is dead. Georgiana married Henry E. Keyes, and is now living.

John Perley, the son of the testator, had three children, all born after the testator's death, namely, Sarah A., Susan B., now the wife of Patrick J. Hanley, and James M., all of whom are now living.

The case was heard by *C. Allen*, J., who made a decree that the devise in the third clause of the will created a vested remainder in the children of the testator's children, opening to let in the afterborn children of said children; and the trustee was instructed and directed to distribute said fund as follows: one eighth to said Georgiana Keyes; one eighth to George Lambert, administrator of the estate of Maria C. Clement; one eighth to George Lambert, administrator of the estate of Hannah Nowell; one eighth to George Lambert, administrator of the estate of Sarah P. Lambert; one eighth to George Lambert, sole heir of John Lambert; one eighth to James M. Perley; one eighth to Sarah A. Perley; and one eighth to Susan B. Hanley.

Susan B. Hanley appealed to the full court.

*I. E. Pearl*, for Susan B. Hanley.

*D. L. Withington*, for George Lambert, Georgiana Keyes, and William Clement.

*B. Morse*, for Emma J. Nowell.

HOLMES, J. The limitation to the children of the testator's children created a vested remainder, which opened and let in those born after the testator's death. *Weston* v. *Foster*, 7 Met.

297. *Hatfield* v. *Sohier*, 114 Mass. 48. *Gibbens* v. *Gibbens*, 140 Mass. 102. The inartificial use of the word "revert" no more obscures the plain meaning that the children are to take as purchasers, than "descend to his legal heirs" in *White* v. *Woodberry*, 9 Pick. 136, 138, or "inherit" in *Moore* v. *Weaver*, 16 Gray, 305.

The question whether the remainder is to be taken *per capita* or *per stirpes* is more difficult. The English rule is, that, when property is given to A. and B. as tenants in common, and, at their decease, to their children, the latter take *per stirpes*, the testator's intent that the share of each tenant in common shall continue separate and go to his children being inferred from the fact that it will go over immediately upon his decease. *Pery* v. *White*, Cowp. 777, 781. *Flinn* v. *Jenkins*, 1 Coll. 365. *Arrow* v. *Mellish*, 1 DeG. & S. 355. *Willes* v. *Douglas*, 10 Beav. 47. *Turner* v. *Whittaker*, 23 Beav. 196. *Wills* v. *Wills*, L. R. 20 Eq. 342. *Houghton* v. *Kendall*, 7 Allen, 72, 77. Perhaps this court has gone further than the English courts would, in reading "at their decease" as meaning "when all the life tenants shall have died," rather than "as they respectively die," *Loring* v. *Coolidge*, 99 Mass. 191, 192, although in that case the limitation over was not to children of the life tenants. But, when this interpretation is adopted, the reason for the English rule ceases, because the whole fund goes over together, instead of in separate shares at different times.

We are of opinion that the testator's grandchildren take *per capita*, not only on the ground that the whole fund goes over together, but also because this remainder is evidently given in the same proportions as the remainder after the wife's death, which is limited by the same clause, and, as the remaindermen's parents take no interest in the latter, there can be no doubt that, if it stood alone, it would go *per capita*. *Weston* v. *Foster*, *ubi supra*. The presence of the latter limitation, and the slightly illiterate character of the will, make it more likely that the words "at their decease" were used in a popular rather than in a strictly logical sense, and thus enable us to apply the authority of *Loring* v. *Coolidge* with more confidence. And, conversely, the construction which we give to the words "at their decease" makes it more probable that the intention to be gathered from the limitation of the remainder after the wife's death is the true

purport of the whole clause, rather than that for which there is some color in other portions of the clause taken by themselves. See further *Ballard* v. *Ballard*, 18 Pick. 41, 45.

In *Merriam* v. *Simonds*, 121 Mass. 198, 203, there was an indication that the remainder was modelled on what the remaindermen would have taken in a representative capacity if the gift to the first takers had been absolute, for the remainder was to " their children or their legal representatives," and the decision went on the ground that legal representatives were mentioned.                    •                    *Decree affirmed.*