Douglas v. Cameron.

A. NORRIS DOUGLAS ET AL., APPELLEES, CARRIE I. HAWKS ET AL., APPELLANTS, V. FANNIE E. CAMERON ET AL., APPELLANTS.

FILED MARCH 3, 1896. No. 8190.

1. **Descent and Distribution:** CONSTRUCTION OF STATUTE. A. died intestate, leaving surviving him neither issue, nor father, mother, brother, or sister. There were surviving four children of a deceased brother, eight children of a deceased sister, and three children of a deceased daughter of such sister. *Held,* That under our statute of descent the twelve surviving nephews and nieces took each one-twelfth part of the intestate's land, *per capita,* and that the grand-nephews and grand-nieces took nothing.

2. ———. Such a case falls within the fifth subdivision of section 30, chapter 23, Compiled Statutes, and not within the third subdivision.

3. ———. Inheritance *per stirpes* does not obtain under our law except where affirmatively provided.

4. ———. The rule of inheritance *per stirpes* is in general applied only from necessity, as where the heirs are of unequal degree of kinship to the intestate. Where they are of equal degree, they take as principals.

5. ———. It is the object of our statute to cut off inheritance *per stirpes* among collaterals where at any point beyond the children of brothers and sisters the surviving kindred are of unequal degrees. In such case those nearest in degree take the estate to the exclusion of those more remote.

APPEAL from the district court of Cedar county. Heard below before NORRIS, J.

*W. E. Gantt*, for appellants.

References: *Ewers v. Follin*, 9 O. St., 327; *Dutoit v. Doyle*, 16 O. St., 400; *Cox v. Cox*, 44 Ind., 368; 24 Am. & Eng. Ency. Law, 391, and cases cited; *Van Cleve v. Van Fossen*, 41 N. W. Rep. [Mich.], 258; *Blake v. Blake*, 85 Ind., 65; *Snow v. Snow*, 111 Mass., 389; *Knapp v. Windsor*, 6 Cush. [Mass.], 156; *Balch v. Stone*, 20 N. E. Rep. [Mass.], 322; *Nichols v. Shepard*, 63 N. H., 391; *Wagner v. Sharp*, 33 N. J. Eq., 520; *White v. Williamson*, 2 Grant [Pa.], 249; *Miller's Appeal*, 40 Pa. St., 387; *Jackson v. Thurman*, 6 Johns. [N. Y.], 322*; *Pond v. Bergh*, 10 Paige Ch. [N. Y.], 140.

*J. M. Woolworth* and *J. P. English*, contra.

References: *Schenck v. Vail*, 24 N. J. Eq., 538; *Quinby v. Higgins*, 14 Me., 309; *Davis v. Stinson*, 53 Me., 493; *Wimbles v. Pitcher*, 12 Ves. [Eng], 433; *Bigelow v. Morong*, 103 Mass., 287; *Conant v. Kent*, 130 Mass., 178; *In re Curry's Estate*, 39 Cal., 529; *Clayton v. Drake*, 17 O. St., 368.

IRVINE, C.

Abijah Hart Norris died intestate August 31, 1894, seized of a large quantity of land in Dixon county. He left no issue, and no surviving father, mother, brother, or sister. A brother and a sister

Douglas v. Cameron.

had, however, died before him. The sister had
nine children, eight of whom survived the intes-
tate, as did three children of the deceased daugh-
ter of the sister. Four children of the brother
survived the intestate. This was an action for
partition brought by the eight children and three
grand-children of the deceased sister, as plaintiffs,
against the four children of the deceased brother.
The district court held that the three grand-
children of the deceased sister took no estate, and
confirmed in each of the surviving children of the
brother and sister a one-twelfth interest,—that is,
the estate was divided among the intestate's sur-
viving nephews and nieces *per capita*. From this
judgment the defendants, the four children of the
deceased brother, appeal, contending that the
estate should have been divided into halves, one-
half to be subdivided among them, and the other
half among the children of the deceased sister,—
that is, their contention is that the inheritance
was *per stirpes* instead of *per capita*. The three
grand-children of the deceased sister also appeal,
contending that their exclusion was erroneous;
that the intestate's nephews and nieces should
take *per capita*, each one-thirteenth; and that they
should take among them the portion which would
have gone to their mother had she survived the
intestate.

The question presented is purely one of statu-
tory construction. But little direct light is
thrown upon it by the authorities, because,—as
aptly suggested in one of the briefs,—cases relat-
ing to the construction of statutes, especially such
statutes as we must now consider, depend so much
upon the peculiar phraseology of the statute that
apparently slight differences in language may

have a most important bearing, and render a for-
eign adjudication a source of danger rather than
an aid.   None of the statutes passed upon by the
cases to which we have been cited is exactly like
our own, although those of Michigan and Massa-
chusetts are so nearly like ours as to render the
decisions of those states helpful in a general way.
We will, therefore, forbear reference to cases of
other states, except where those cases tend to
throw light upon the general theory of modern
statutes of descent and the policy of their con-
struction; but this last phrase suggests a com-
ment which should be made in answer to certain
arguments in the briefs.   With the wisdom or jus-
tice of the statute we have nothing to do.   The
statutes of descent are creations of positive law,
and effect must be given to them according to
their obvious meaning, regardless of contingen-
cies which the court might think the legislature
should have provided for, and regardless of our
own notions of abstract justice. (*Shellenberger v.
Ransom*, 41 Neb., 631.)   In cases of ambiguity the
fact that a particular construction would lead to
an absurd or manifestly unjust result may be a
reason for presuming that the legislature did not
intend such construction.   Beyond this such rea-
soning is without value. Our statute is as follows:
"When any person shall die seized of any lands,
tenements, or hereditaments, or of any right
thereto, or entitled to any interest therein in fee-
simple, or for the life of another, not having law-
fully devised the same, they shall descend, subject
to his debts, in the manner following: First—In
equal shares to his children, and to the lawful
issue of any deceased child by right of representa-
tion; and if there be no child of the intestate

living at his death, his estate shall descend to all his other lineal descendants; and if all the said descendants are in the same degree of kindred to the intestate, they shall have the estate equally; otherwise they shall take according to the right of representation. Second—If he shall have no issue, his estate shall descend to his widow during her natural lifetime, and, after her decease, to his father; and if he shall have no issue nor widow, his estate shall descend to his father. Third—If he shall have no issue, nor widow, nor father, his estate shall descend in equal shares to his brothers and sisters, and to the children of any deceased brother or sister, by right of representation; *Provided,* That if he shall have a mother also, she shall take an equal share with his brothers and sisters. Fourth—If the intestate shall leave no issue, nor widow, nor father, and no brother nor sister living at his death, his estate shall descend to his mother, to the exclusion of the issue, if any, of the deceased brother and sister. Fifth— If the intestate shall leave no issue, nor widow, and no father, mother, brother, nor sister, his estate shall descend to his next of kin, in equal degree, excepting that when there are two or more collateral kindred in equal degree but claiming through different ancestors, those who claim through the nearest ancestor shall be preferred to those claiming through an ancestor more remote; *Provided, however,* Sixth—If any person shall die, leaving several children, or leaving one child, and the issue of one or more other children, and any such surviving child shall die under age, and not having been married, all the estate that came to the deceased child, by inheritance from such deceased parent, shall descend in equal shares to the

other children of the same parent and to the issue of any such other children who shall have died, by right of representation. Seventh—If, at the death of such child who shall die under age, and not having been married, all the other children of his said parent shall also be dead, and any of them shall have left issue, the estate that came to said child, by inheritance from his said parent, shall descend to all the issue of other children of the same parent; and if all the said issue are in the same degree of kindred to said child, they shall share the said estate equally; otherwise they shall take according to the right of representation. Eighth—If the intestate shall leave a widow and no kindred, his estate shall descend to such widow. Ninth—If the intestate shall have no widow, nor kindred, his estate shall escheat to the people of this state." (Compiled Statutes, 1895, ch. 23, sec. 30.) The first group of appellants claims that the case falls under the third subdivision of the section quoted; while the second group, the sister's grand-children, claims that it falls under the fifth subdivision. Strictly speaking, it must fall within one or the other of these provisions, although in determining which, and the construction to be given the clause found to apply, the whole section must be construed together. Indeed, the grand-children referred to, in order to make out their claim, are compelled not only to bring the case within the fifth clause, but to engraft upon that clause the principle of representation found in the third clause.

We shall first consider the contention of the four defendants, the children of the deceased brother. Sir William Blackstone, after defining inheritance *per stirpes*, says, speaking of the civil

Douglas v. Cameron.

law: "And so among collaterals, if any person of
equal degree with the persons represented were
still subsisting (as if the deceased left one brother
* . * * ), the succession was still guided by the
roots; but, if both of the brethren were dead leav-
ing issue, then (I apprehend) their representatives
in equal degree became themselves principals, and
shared the inheritance *per capita*,—that is, share
and share alike; they being themselves now the
next in degree to the ancestor, in their own right,
and not by right of representation. So, if the next
heirs of Titius be six nieces, three by one sister,
two by another, and one by a third, his inherit-
ance, by the Roman law, was divided into six
parts, and one given to each of the nieces, whereas
the law of England in this case would still divide
it only into three parts, and distribute it *per
stirpes*, thus: one-third to the three children who
represent one sister, another third to the two who
represent the second, and the remaining third to
the one child who is the sole representative of her
mother." (2 Blackstone, Commentaries, 217.) This
is stated as the common law rule; but immedi-
ately following what we have quoted the reason
therefor is given that it is a necessary consequence
of the preference given at the common law to male
issue and to the first-born among the males, to
both of which the Roman law is a stranger. (2
Blackstone, Commentaries, 218.) Blackstone's dis-
cussion of the canons of descent has been by no
means free from criticism; but whether or not he
in this respect accurately stated the provisions of
the civil and of the common law, and the reasons
for their distinction, his words are of great im-
portance, because during the whole formative
period of the American law of descent, at least

outside of the original colonies, Blackstone's Com-
mentaries was generally accepted as the embodi-
ment of the common law.   Every student resorted
to it as teaching the elements of his profession.
Most practitioners regarded it as the authorita-
tive statement of the English law at the period of
separation.   So that those who framed the exist-
ing statutes of descent may safely be presumed to
have been guided largely by what is there said as
to rules of law which they were about to redeclare
or alter, and as to the reasons for their existence.
Referring to the text in this light, it is significant
that in America the most general and earliest de-
partures from the common law were in the abol-
ishment of primogeniture and the preference of
males.   These changes swept away the reasons
given by Blackstone for representation among col-
laterals; and it must have been in the minds of
the framers of the statutes to follow another
maxim frequently expressed by Blackstone, and
sweep away the law itself, together with the rea-
sons for its existence.   Accordingly we find Chief
Justice Shaw saying in 1850: "It is a plain rule of
law, that those who take property, as a class of
persons described, where there is nothing in the
law making the appropriation to distinguish their
respective rights, take in equal shares" (*Knapp v.
Windsor*, 6 Cush. [Mass.], 156); and elsewhere in
the opinion it is said that the expression in the
statute, of a preference in the same words as that
contained in the fifth clause of our statute, shows
that in other cases heirs take *per capita*, and again:
"The rule of representation applies only from
necessity, or where there are lineal heirs in differ-
ent degrees."   As before remarked, the statute of
Massachusetts is very much like our own.   So

similar in fact that it is more than probable that directly or indirectly ours was modeled upon that upon which Chief Justice Shaw was commenting; so that his language is entitled to especial weight. The point, however, we desire to impress is that at the time he wrote, representation in America was not presumed, but was only applied where the statute affirmatively provided therefor. Other Massachusetts cases of less weight as indicating a general policy of the law, but more directly in point as to interpretation, are *Snow v. Snow,* 111 Mass., 389, and *Balch v. Stone,* 149 Mass., 371. The significance of these cases is chiefly in the fact that they construe such language as "next of kin in equal degree" as implying a taking *per capita* by the class described. The case of *Houston v. Davidson,* 45 Ga., 574, is also instructive as indicating that a *per capita* distribution is intended except within the degrees where representation *per stirpes* is expressly provided. Indeed we understand counsel for the defendants to practically concede this point by admitting that if the case does not fall within the third subdivision, which provides for representation, a distribution *per capita* must be made. We think, however, the case falls within the fifth and not the third clause. The section undertakes to provide a complete scheme of descent, beginning with the issue of the intestate, exhausting all blood kindred, providing for a single case, that of the widow, where the inheritance is made to pass by affinity in the absence of kindred by blood, and ending with escheat to the state. The first clause provides that the children shall take in equal shares, and the lawful issue of any deceased child by right of representation. This is followed by an express provision

whereby if no child of the intestate survive him, the estate shall descend to the more remote descendants *per capita*, if they are all in the same degree, otherwise *per stirpes*. This clause is significant on the question before us, in this: that thus at the very outset we find that the rule is different where one child survives, and where they are all dead. Representation is almost uniformly recognized more fully in the case of direct descendants than in the case of collaterals; and, therefore, it would be a strange thing if the legislature should provide for a descent *per capita* among lineal heirs under circumstances where the descent would be *per stirpes* among collaterals. The fact that this distinction is created in the first clause is of service in construing the third, fourth, and fifth. The second clause is unimportant to the discussion, except that by the joint effect of the first and second, lineal heirs, both in the ascending and descending line, are provided for, so that with the third clause the consideration of collateral begins. The third provides that in the absence of issue, widow, and father, the estate shall descend in equal shares to brothers and sisters "and to children of any deceased brother or sister, by right of representation." It is contended that the case before us is covered by this clause, and that the provision for representation in favor of the children of "any" deceased brother or sister extends to the case where all brothers and sisters are deceased. If this were true, as we have already suggested, it would be somewhat remarkable in view of the express provision to the contrary in the case of deceased children, but we think the subsequent clauses show that it is not true, and expressly carry out the analogy of the

first clause. The third provides for the absence of issue, widow, and father; and the prior death of "any deceased brother or sister." The fourth provides for a case where there is neither issue, widow, father, "and no brother nor sister living at his death." In this case the estate goes to the mother to the exclusion of the issue of any deceased brother or sister. Here, then, is evidently a case not within the third section, for the sole reason that there is no surviving brother or sister. In determining whether or not a case falls within the third or fourth clause it becomes absolutely necessary to interpret the third clause as, if following the phrase "any deceased brother or sister," there was added "a brother or sister surviving." Then comes the fifth clause, which provides for the case where there is left neither issue, widow, father, brother or sister, nor mother, which is the case before us, and which differs from the fourth section only in that it excludes the case of a surviving mother. These three clauses, therefore, form a scheme of inheritance among collaterals, embracing incidentally the case of the mother. They pursue an exclusive process, and must be read, in order to give the whole effect, as if, in addition to stating what kindred do not survive, they also stated that there were surviving those next in degree not named in the excluding clauses. As the case falls within the fifth clause, it follows from what has already been said that a distribution *per capita* is required.

The case of the sister's grand-children is perhaps less clear, but we think the district court was also correct in its ruling upon their claim. What we have already said in regard to the general policy, whereby representation exists only by ne-

cessity or in cases expressly provided, is applicable to this branch of the case. Among lineal descendants representation is expressly provided for, without limitation as to degree, the language being, "If all the said descendants are in the same degree of kindred to the intestate, they shall have the estate equally, otherwise they shall take according to the right of representation." The sixth and seventh clauses, containing additional provisions for lineal descent, are in similar language. The language of the fifth clause is that the estate shall descend "to his next of kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor shall be preferred to those claiming through an ancestor more remote." By section 33, degrees of kindred are to be computed according to the civil law; so that these three plaintiffs, whom for convenience we have referred to as grand-children, stand one degree more remote than the other parties to the action. The first, sixth, and seventh clauses provide for representation among lineals of unequal degree. The fifth clause provides that those who are nearest shall be preferred to those who are more remote. The seventh canon of descent as stated by Blackstone is, "that in collateral inheritances the male stock shall be preferred to the female." (2 Blackstone, Commentaries, 234.) The term "preferred" was there used in the sense of entirely excluding the female stock provided male stock survived, and that, we think, is the general use of the term in such connection. It seems to be the policy of all the statutes at some point more or less remote to cut off representation entirely among

28

collaterals, and where, because of unequal degrees of kinship, representation would otherwise be necessary, to defeat it by making a *per capita* distribution among those nearest in degree and excluding the more remote. Our law seems to reach that period where, at any point among collaterals beyond the children of brothers and sisters, the surviving kindred fall into unequal degrees. This is the construction given elsewhere to statutes resembling ours. (*Van Cleve v. Van Fossen,* 73 Mich., 342; *Schenck v. Vail,* 24 N. J. Eq., 538; *Bigelow v. Morong,* 103 Mass., 287; *Davis v. Stinson,* 53 Me., 493; *Conant v. Kent,* 130 Mass., 178.) Cases holding a different rule, so far as we have found any, have been under statutes which by their clear language required a different construction.

The judgment of the district court was in all respects correct.

JUDGMENT AFFIRMED.