HAROLD M. GAUGHEN ET AL., APPELLANTS, V. LEONARD GAUGHEN ET AL., APPELLEES, IMPLEADED WITH ALICE JOAN EMANUEL ET AL., APPELLANTS.

112 N. W. 2d 285

Filed December 1, 1961. No. 34881.

*William G. Line,* for appellants.

*Edward Asche* and *George E. McNally,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This case involves the construction of the will of Martin F. Gaughen, deceased. Harold M. Gaughen is a son of the deceased and is referred to in certain paragraphs of the will as Harold Gaughen. Mamie Gaughen is the wife of Harold Gaughen. Leonard Gaughen is a son of the deceased, and Thelma Gaughen is the wife of Leonard Gaughen. Marie Mundy is a daughter of the deceased,

and her husband is Leo Mundy. Alice Joan Emanuel is a daughter of Harold Gaughen and the wife of Dennis Emanuel. Rita A Gaughen is a daughter of Harold Gaughen. Martin F. Gaughen, Charles E. Gaughen, Thomas P. Gaughen, Kathryn Jean Gaughen, and Kenneth G. Gaughen are the children of Leonard and Thelma Gaughen. The above-named persons constitute the sole persons interested in the estate of the deceased.

The appellants contend that the deceased intended by his last will and testament that certain described real estate be disposed of as follows: An undivided one-third interest therein to descend for life to Leonard Gaughen and Thelma Gaughen, or the survivor, an undivided one-third interest for life to Marie Mundy and Leo Mundy, or the survivor, and an undivided one-third interest for life to Harold Gaughen and Mamie Gaughen, or the survivor. It was further contended that after the death of the above parties, it was the testator's intention that the remainder interest in said real estate was to go in fee simple as follows: An undivided one-third interest in said real estate to the children of Leonard Gaughen, an undivided one-third interest to the children of Harold Gaughen, and the remaining undivided one-third interest, upon the passing of the survivor of Marie Mundy and Leo Mundy to the living children of Harold Gaughen and Leonard Gaughen, share and share alike, that is, if no natural-born children of Marie Mundy and Leo Mundy survive them.

In an amended petition the plaintiffs alleged that a patent ambiguity appeared in paragraph 2 of the will, which will be referred to in the opinion.

The guardian ad litem of Charles E. Gaughen, Thomas P. Gaughen, Kathryn Jean Gaughen, and Kenneth G. Gaughen, minors, alleged by way of cross-petition that by the terms of the last will of the testator he intended to and did devise his real estate to the children of his sons Leonard Gaughen and Harold Gaughen, and the children born naturally to his daughter Marie Mundy,

share and share alike, or per capita, and not per stirpes, subject only to the life estates therein to Harold Gaughen, Leonard Gaughen, Marie Mundy, Mamie Gaughen, Thelma Gaughen, and Leo Mundy; and that there was neither a latent nor patent ambiguity in said will.

Martin F. Gaughen filed an answer and cross-petition wherein he prayed that the petition and amended petition of the plaintiffs be dismissed; and that the court make a determination that no ambiguity, either latent or patent, existed in the last will and testament of the testator, and by the terms thereof the testator devised his real estate to the children of Leonard Gaughen and Harold Gaughen and the children born naturally to Marie Mundy, in equal shares, per capita and not per stirpes, subject only to the life estates therein of the parties as heretofore named.

The trial court rendered judgment finding that the will did not contain either a latent or a patent ambiguity, and that the testator intended to devise the entire remainder per capita, and not per stirpes.

The plaintiffs Harold Gaughen and Mamie Gaughen, and defendants Alice Joan Emanuel and Rita Gaughen filed a motion for new trial which was overruled. An appeal was taken to this court by Harold Gaughen and Mamie Gaughen, plaintiffs and Alice Joan Emanuel and Rita Gaughen, defendants.

The part of the will necessary to be construed in this case is as follows: "SECOND. I give and devise to my sons Harold Gaughen and Leonard Gaughen and my daughter Marie Mundy or to their spouses Mamie Gaughen, Thelma Gaughen and Leo Mundy, respectively, during their natural lives (description of the land omitted) * * * Dodge County, Nebraska; and in the event any of the spouses Mamie Gaughen, Thelma Gaughen or Leo Mundy should remarry, their life estate in the above described real-estate shall cease; and upon the death of said life tenants or the remarriage of my children's spouses, Mamie Gaughen, Thelma Gaughen and Leo

Mundy, I give and devise the remainder of said real estate to the children of my son Leonard and the children of my son Harold, share and share alike and to the children born naturally of my daughter, Marie Mundy, if any, and in the event no children are born naturally to my daughter Marie, then I give and devise their share in said above described real estate to the children of my sons Harold and Leonard, share and share alike."

Our opinion reported in 171 Neb. 763, 107 N. W. 2d 652, holds that the remainder estate goes to the children of Leonard Gaughen and Harold Gaughen, and the natural-born children of Marie Mundy, share and share alike, or per capita, and not per stirpes, and that the decree should be modified to provide that all of the children of Harold Gaughen and Leonard Gaughen and the issue of Marie Mundy share in the remainder estate as a single class per capita, which class shall be subject to being opened to admit additional children of Harold Gaughen and Leonard Gaughen and issue of Marie Mundy.

When this case was first argued and submitted to this court the appellants did not set forth their contention as follows: Where land is conveyed or devised to several persons for life and at "their death" to "their children," the phrase "their death" will be read "their respective deaths" and the phrase "their children" will be read "their respective children." Consequently, this court did not have the opportunity to pass upon the issue now raised by the appellants in their motion for rehearing.

The will is not artfully drawn, its provisions are carelessly expressed, and it is patently ambiguous.

The question to be determined on this appeal is whether the grandchildren take per capita or whether they take per stirpes.

Distribution per capita is an equal division of the property to be divided among the beneficiaries, each receiving the same share as each of the others, without reference to the intermediate course of descent from

the ancestor. Distribution per stirpes is a division with reference to the intermediate course of descent from the ancestor. It gives the beneficiaries each a share in the property to be distributed, not necessarily equal, but the proper fraction of the fraction to which the person through whom he claims from the ancestor would have been entitled. See Kramer v. Larson, 158 Neb. 404, 63 N. W. 2d 349.

There are certain rules of law that govern the manner in which a will is to be construed.

In searching for the intention of the testator the court must examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used. Jacobsen v. Farnham, 155 Neb. 776, 53 N. W. 2d 917, 33 A. L. R. 2d 543; Kramer v. Larson, *supra.*

The intention of the testator as determined from the will must be given effect if it is not inconsistent with any rule of law. Jacobsen v. Farnham, *supra;* Kramer v. Larson, *supra.*

The intention within the ambit of this rule is the one expressed by the testator by the language employed in his will and does not refer to an entertained intention not expressed therein. In re Estate of Zents, 148 Neb. 104, 26 N. W. 2d 793; Kramer v. Larson, *supra.*

A patent ambiguity in a will must be removed by interpretation according to legal principles and the intention of the testator must be found within the four corners of the will. Kramer v. Larson, *supra.* See, also, § 76-205, R. R. S. 1943.

Section 76-117, R. R. S. 1943, provides: "When an otherwise effective conveyance of property is made to two or more persons as tenants in common for life or for a term of years which is terminable at their deaths, with an express remainder, whether effective or not, (a) to the survivor of such persons, or (b) upon the death of all the life tenants to another person or persons, such

conveyance, *unless a different intent is effectively manifested,* creates cross limitations among the several tenants in common, so that the share of the one first dying passes to his cotenants to be held by them in the same manner as their original shares, and the shares of the second and others dying, in succession, are similarly treated until the time when the property is limited to pass as a whole to the remainderman." (Emphasis supplied.)

The above-cited section is relied upon by the appellees in this case to support their contention above stated.

The appellees cite Bodeman v. Cary, 152 Neb. 506, 41 N. W. 2d 797, wherein the testator gave his daughters, Sophia Bodeman and Amy Bodeman, all of his real estate for their use and benefit so long as they lived. On their death, he devised his real estate to certain named children and grandchildren, share and share alike. This court held that the fee simple title to no part of the real estate involved should vest in any devisee free from the burden of the life estate, until both life tenants were deceased. Amy still lived, and had a life estate in all of the real estate. The court held: "An estate given or conveyed to two or more persons for their use and benefit so long as they live ordinarily continues during the life of each, and is terminated only at the death of the survivor."

The appellees rely on the case of Dole v. Keyes, 143 Mass. 237, 9 N. E. 625, wherein a testator, by his will, gave to his wife the income and improvement of his house during her life, and charged his estate with her maintenance; and then provided as follows: "All the rest and residue of my estate, real or personal, of every name and nature, I give the income and the improvement of the same to my children, to wit, John Perley and Sarah Lambert, wife of George Lambert, and at their decease the said real and personal estate shall revert to their children, and also the above described estate given to my beloved wife after her decease, to them

and their heirs forever." The court held: "We are of opinion that the testator's grandchildren take *per capita,* not only on the ground that the whole fund goes over together, but also because this remainder is evidently given in the same proportions as the remainder after the wife's death, which is limited by the same clause, and, as the remaindermen's parents take no interest in the latter, there can be no doubt that, if it stood alone, it would go *per capita."* The decree of the lower court was affirmed.

It is likewise the appellees' contention that the words "share and share alike" indicate an equal division among a class and they import a division per capita, unless a contrary intention appears. There can be no quarrel with this proposition of law.

We believe that the foregoing constitutes the appellees' contention respecting the will in the instant case. The cases of Bodeman v. Cary, *supra,* In re Estate of Pfost, 139 Neb. 784, 298 N. W. 739, and Kramer v. Larson, *supra,* cited by the appellees, will be referred to later in the opinion.

We believe that the old English common law cases throw some light on the type of will before us. Consequently we cite in part some of such cases.

In Arrow v. Mellish, 1 De G. & Sm. 355, John Moore made his will containing the following bequest: "To her my said wife, I give and bequeath the use and usage of all my worldly goods, money, and other effects which I may die possessed of, to have and to hold during her natural life, and at her death I give and bequeath the same to my three nieces, viz., Elizabeth, Catherine, and Sarah, daughters of my brother William Moore, and also to Mary Arrow, daughter of John Roxbee, niece to my said wife, Mary Moore, to be by them equally divided, share and share alike, and at their deaths to go equally, share and share alike, to their children." The Vice-Chancellor said: "In this case the words 'their children' must mean 'their respective children.'" It

was further said: Bequest to testator's wife, of the use and usage of all his effects for her life, and at her death bequest of the same to four nieces by name, to be by them equally divided, share and share alike, and at their deaths to go equally, share and share alike, to their children, held, to give the respective children their parent's share only.

In Wills v. Wills, 20 L. R. Eq. 342, John Wills, by his will, gave the residue of his estate and property to his trustees with the following direction: "The interest of the residue of my estate vested in the names of the said trustees shall be paid half-yearly to my sons Charles Thomas Wills and John Wills equally for their natural lives, and at their death the principal to be divided equally between the children of the said Charles Thomas Wills and John Wills." Sir G. Jessell, M. R., said: "In the first place, the will makes a provision for the testator's two children primarily, and then for his grandchildren. The natural course would be, under these circumstances, that after the death of either of the children, his children should be provided for. It is, therefore, very unlikely that he intended that there should be no provision for one branch until the head of the other branch should be dead.

"The testator gives the income of the residue of his estate to his two sons equally for their lives. That would not give to either of them more than a moiety. Then he proceeds, 'And at their death the principal to be divided equally between the children of the said C. T. Wills and John Wills.' That is all. The expression 'at their death' cannot be literal. It is impossible the testator could have supposed that both his sons should die at the same moment; and I may repeat the observations of Lord Langdale in Willes v. Douglas (1), that ' "at their death" cannot mean the contemporaneous death of all, but the deaths of each respectively.' If so, away goes Malcolm v. Martin (2).

"The only other possible interpretation is, 'at the

death of the survivor,' but that gets rid of the word 'their.' I prefer taking it as 'at their respective deaths.' There is now no gift of the moiety of the income after the death of either of the sons to anybody. He directs at their death 'the principal,' that is, the principal of that moiety of which the income is now free, 'to be divided equally between the children' of his two sons.

"There are two possible constructions. The literal construction will not do. The natural and probable construction is that by the children he means the respective children. This was the view taken in Arrow v. Mellish (3), where the words 'their children' were held to mean 'their respective children.' "

In a number of the later cases a per stirpes distribution was directed, where the testator had made a bequest to several for life and then to their children, issue, or heirs.

The case of Clapper v. Clapper, 246 Iowa 899, 70 N. W. 2d 145, was a real estate partition suit, but the appeal was only from an adjudication construing a will to provide that the remaindermen, children of the testator's children, take the property per stirpes and not per capita. The parties were the beneficiaries under the will of Henry W. Clapper. His wife predeceased him. Omitting the reference to the testator's wife, the fourth paragraph of the will stated: "* * * the use or rental of the above described real estate shall go to my children during their lifetime, and at their death shall be divided equally, and shall vest in 'fee simple' between their children." The provision for the testator's children created a tenancy in common in the land during the life of each child. § 557.15, Code of Iowa, 1954. This section of the Iowa Code provides: "Conveyances to two or more in their own right creates a tenancy in common, unless a contrary intent is expressed." Nebraska does not have any such statute. In any event, this court may determine that a tenancy in common exists when warranted by a will.

In the Clapper case the appellees contended that the will showed testator intended that the remainder of the one-fourth share in the use of the land which each of the testator's children held for life should go to such life tenant's children equally at his death, which would result in a per stirpes distribution. Appellants contended that the will showed testator intended a per capita distribution. The court said: "However, as stated in appellants' brief, the sentence may be clarified by eliminating the words 'shall vest in fee simple', so it would read 'and at their death shall be divided equally between their children.' Under the proper rule of construction it would mean 'and at their respective deaths shall be divided equally between their respective children.' This means a distribution per stirpes, with the children of each child taking equally that share (¼) in which their parent had his life estate." The court further said: "The rule of construction stated by the decisions quoted from is sound and appears to represent the majority doctrine. * * * Hence, 'their death' will be read 'their respective deaths' and 'their children' will be read 'their respective children.' The sentence in the will would then read 'and at their respective deaths shall be divided equally, and shall vest in fee simple between their respective children.'" There are a multitude of cases that sustain the position taken in Clapper v. Clapper, *supra*. See, Annotation, 13 A. L. R. 2d 1062, supplementing annotations in 16 A. L. R. 122, 78 A. L. R. 1411, and 126 A. L. R. 179.

In Dills v. Deavors (Ky.), 266 S. W. 2d 788, W. T. Deavors (a son of Sally Deavors, deceased) and his son Earl brought an action against Dewey Dills, devisee under the will of a deceased daughter of Sally Deavors, to determine their rights under a deed executed by Sally Deavors to her children. The deed read as follows: "This deed of conveyance made and entered into this 11th day of July, 1892, between Sally Deavors, party of the first part, and Martha J. Deavors, Victoria C.

Deavors, and W. Thomas Deavors, parties of the second part: Witnesseth: That the said party of the first part, for and in consideration of the love and affection I have for my three children, do hereby sell and convey to the party of the second part, their heirs and assigns, the following described property, to-wit: (Description omitted) The said Sally Deavors retains and keeps possession of said land during her natural life time * * * and at her death the aforesaid tract of land is to go to her three children * * * and they are to have full possession of the same so long as they live, and at their death it is then to go to their bodily heirs * * *." Sally Deavors died in 1904. She left surviving her the three children previously named. The court said: "It appears to be the prevailing rule that where land is conveyed or devised to several persons for life and at 'their death' to 'their' children or bodily heirs, the phrase 'their death' will be read 'their respective deaths' and the phrase 'their children' or 'their bodily heirs' will be read 'their respective children' or 'their respective bodily heirs.' Annotation, 16 A. L. R. 123, 57 Am. Jur., Wills, sec. 1315, p. 870."

In Horne v. Horne, 181 Va. 685, 26 S. E. 2d 80, the court said: "The presumption of a per capita distribution is not a strong one and is easily overborne. It will yield to a very faint glimpse of a contrary intention in the context, or a contrary intention deduced from a study of the will as a whole." See, also, Claude v. Schutt, 211 Iowa 117, 233 N. W. 41, 78 A. L. R. 1375. In the Horne case, which started as a suit for partition, a grantor conveyed a certain tract to his two sons with remainder "to their lawful children." The deed also provided that the grantor wished one son to be given the dwelling house and 75 acres of land and no more and the land was properly partitioned accordingly. One of the grantees died without issue and the children of the other grantee contended that the remainder was a gift to a class composed of the children of both, if both had chil-

dren, or, if only one had children, to the children of that one. On the other hand, the heirs of the grantor contended that the deed created life estates in separate and distinct parts of the tract of land and that the remainder must be construed to be distributive so as to give the share of each grantee to his children, if he had any, and one son having died without issue, that part of the estate given him for his life reverted to the estate of the original grantor. It was held: That the children of the grantee were not entitled as purchasers under the deed to the remainder in that part of the land given to the other grantee, since the two life estates were not joint estates in the land, but were estates in separate and distinct parts thereof, certainly not less than life estates in common.

In Stoutenburgh v. Moore, 37 N. J. Eq. 63, a testator provided by his will "all the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath the income to my two sons, Robert and Edward, to be equally divided between them during their lives, *and at their death to be equally divided between my grandchildren*, to them, their heirs and assigns." The testator had two sons living at the time of making the will. They were both married and both survived the testator. Edward died leaving a widow and one child; Robert survived and had four children. The questions presented were, what was the interest of Robert in the remainder, and what was the interest of the grandchildren of the testator? Robert claimed that he was entitled, by virtue of an implied cross-remainder, to the whole of the income for his life, and that the remainder was not divisible until his death. His children claimed that whenever it was divided it was to be divided per capita among all the grandchildren, his children and the child of his brother Edward. On behalf of the complainant, the child of Edward, it was claimed that the gift to Robert was only half of the income of the remainder, in any event, and that on the death of Edward

the remainder was divisible into two shares, one of which went at once to the child of Edward, and that on the death of Robert the other share would go to his children. The court said that neither of the sons had a right, under the will, to more than one-half of the income in any event, and when one of them died the principal was to be divided. The author of the opinion said: "* * * I am of opinion that by the term 'at their death' the testator meant at the death of them respectively, not at the death of the survivor." In this opinion the case of Jackson v. Luquere, 5 Cow. 221, was referred to, wherein, under a devise to two daughters, "to be equally divided between them, share and share alike, and to be to them for and during their natural life, and after their death then to be to their and each of their children, and to be divided between them, share and share alike" it was held that on the death of one daughter, her share vested in her children immediately, per stirpes.

In Williams v. Johnson, 228 N. C. 732, 47 S. E. 2d 24, a devise was made to the children of the testator's deceased son for life and then to their bodily heirs, or issue, surviving them, and in the event that any of such grandchildren should die, without leaving surviving issue, then to his next of kin in fee simple. The court held that the children or issue of each grandchild should take per stirpes and not per capita. The court pointed out that if the testator had intended that his grandchildren and their issue should constitute a class and take per capita, there would have been no necessity for a limitation over upon the failure of any grandchild to leave issue surviving him.

In 3 Page on Wills (Lifetime Ed.), § 1082, p. 291, it is said: "Even the use of such a word as 'equally' or 'share and share alike' is not conclusive of an intention to distribute per capita; since the equality which is intended may be among the various classes, and not among all the individuals. Accordingly, a gift to the heirs of A and B, etc., to be divided equally, or share and share

alike, has been held, in some cases, to show an intent to distribute per stirpes." And in § 1081, p. 290, it is said: "The fact that the parents are named and the children are not named, but are described by relationship to their respective parents, tends to show that a per stirpes distribution is intended, * * *." See, also, Bethea v. Bethea, 116 Ala. 265, 22 So. 561; Mooney v. Tolles, 111 Conn. 1, 149 A. 515, 70 A. L. R. 608. To like effect see 3 Jarman on Wills (7th Ed.), c. XLII, pp. 1688, 1689, 1690; Mewborn v. Mewborn, 239 N. C. 284, 79 S. E. 2d 398.

Restatement, Property, § 301, p. 1649, states: "Similarly if the members of the class are of two or more families and the parent of each of these families is given a prior life interest in an equal share in the subject matter of the class gift, this fact tends to establish that those class members who are the children of one life tenant are to take only that share in which the parent life tenant had his interest. Additional language specifically giving over the share of the parent to his children excludes per capita distribution."

In In re Estate of Pfost, *supra,* the word "between" was considered as more controlling than the words "be divided equally, in equal shares, share and share alike" in determining that a devise was to be distributed between 13 people, half to one of the 13 and the other half to the 12, rather than to the 13 per capita. It is apparent that this court did not in reality give too much credence to the words "share and share alike" in determining this case. In the cited case this court did not say that the use of the term "share and share alike" would or would not indicate a per capita division.

The cases of In re Estate of Pfost, *supra,* and Kramer v. Larson, *supra,* are not ones involving a life estate in more than one person and remainder in their children, or words of similar import. In the latter case the rule of construction is different, as hereinbefore pointed out.

In Bodeman v. Cary, *supra,* the court held that the true intent was to create a joint tenancy with right of

survivorship.  In the instant case it appears that there was no intent to create a joint tenancy with right of survivorship between the three families, but that survivorship was only intended between the husbands and wives.  The court said, quoting from In re Estate of Vance, 149 Neb. 220, 30 N. W. 2d 677:  " 'While as between joint tenancies and tenancies in common the law prefers the latter, yet if the purpose to create a joint tenancy is clearly expressed in an instrument of conveyance or ownership, the law will permit the intention of the parties to control, and a joint tenancy with right of survivorship will be created.' "

We have been unable to find cases exactly in point, relating to the construction of a will such as we have in the instant case.  However, there are a great number of cases, including those cited, that use certain words which have the same meaning as the words used in the will considered in this case.  In the case of Dole v. Keyes, *supra,* cited by the appellees, the court rejected the majority rule as we view it from our research.

As we interpret the will under consideration, rules of law relating thereto, and the authorities as heretofore set forth, the testator devised three life estates, each life estate consisting of a one-third interest in the property, to Harold and his wife, if she survives him, to Leonard and his wife, if she survives him, and to Marie Mundy and her husband, if he survives her.  At the death of Harold, or at the death of his wife, if she has not remarried, whichever occurs last, their life estate in one-third of the property is extinguished and Harold's children take the right of possession to one-third of the property.  Leonard's children take in the same manner.  The same result follows if Marie and Leo Mundy leave natural-born children surviving them and, if they leave no natural-born children surviving, their life interest is extinguished and Harold's and Leonard's children take their aunt's one-third interest in the property per capita.  The fee thereby descends in thirds at three distinct

times, at the death of the survivor of Harold and his wife, the death of the survivor of Leonard and his wife, and the death of the survivor of Marie and her husband.

Section 76-117, R. R. S. 1943, providing for the creation of cross-remainders, is not applicable for the reason that the will effectively manifests an intent not to create cross-remainders between the life tenants. In the will here considered there is no language which clearly expresses that a joint tenancy exists, but the language therein does appear to create a tenancy in common.

We conclude that insofar as our former opinion is in conflict with this opinion it should be overruled.

We reverse the judgment of the district court and remand the cause with directions to render judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., concurring.

The dissent in this case attempts to make difficult that which appears to be a rather simple problem when properly analyzed.

The real question, as I view it, is whether or not the testator created a tenancy in common or a joint tenancy when he conveyed a life estate to his three children. I submit that it was the former. There is not one word in this will to indicate that a joint tenancy or a tenancy in common with survivorship was intended. It is a well-known rule in this state that tenancies in common are favored and that joint tenancies will not be found in the absence of language indicating a clear intent to create one.

Upon the decease of a tenant in common his interest descends to his children in the absence of language vesting it elsewhere. Consequently, upon the death of one of the tenants in common his interest vests immediately in his children, share and share alike. The fault in the dissent is contained in the unwarranted premise that the life estate created a survivorship in the

surviving life tenant when there is not the semblance of any such intent.

The majority is charged in the dissent with ignoring section 76-117, R. R. S. 1943. This act applies only when a conveyance of property is made to two or more persons as tenants in common for life or for a term of years which is terminable at their deaths "with an express remainder, * * * (a) to the *survivor* of such persons, or (b) upon the death of *all* the life tenants." There is no provision of the will that brings the case within the scope of this statute. Even the Nebraska Law Review article quoted in the dissent reflects this limitation upon the scope of section 76-117, R. R. S. 1943.

The will provided that in the event no children were born naturally to his daughter, the testator gave their share in the real estate to the "children of my sons Harold and Leonard, share and share alike." If the position taken in the dissent is the correct one, there was no need whatever for this provision. It becomes superfluous under such an interpretation. The rule is that the intent of the testator will be gathered from the four corners of the will. This means that the intent of the testator is to be determined from the whole will and not only from those provisions that appear to support any specific theory.

I submit that the conclusion of the majority is consistent with all provisions of the will and properly reflects the intent of the testator. The confusion in the case, if any, is injected by the dissent and not the majority opinion.

SPENCER, J., dissenting. SIMMONS, C. J., and BOSLAUGH, J., concurring in this dissent.

I am unable to agree with the majority opinion for three reasons: First, it to me patently ignores the intent of the testator and by an anachronistic rule of construction wholly foreign to Nebraska law actually defeats that intent; second, it in effect repeals section 76-117, R. R. S. 1943, which is section 17 of the Uniform

Property Act; and, third, if a rule of construction is to be applied, the wrong one has been used.

The question in this case is whether the remainder is to be distributed per stirpes or per capita. In concluding that a part of the remainder is to be distributed per stirpes, the majority opinion brings into our law a rule of construction sometimes referred to as the English rule, which has been adopted in some states in this country which lean toward a stirpital construction. Stated briefly, this rule provides that a devise to life tenants as tenants in common with remainder to their children upon the death of the life tenant is to be construed not as it is written but as if the devise read to their *respective* children upon their *respective* deaths. As I will suggest later, this rule has no place in Nebraska law, and, in any event, it is not applicable to this will.

I believe that the intent of the testator, which is controlling in the construction of any will, is so evident in this case that it is unnecessary to resort to an arbitrary rule of construction in order to arrive at the meaning intended. I think it is clear that the testator intended that his children during their "natural lives," or their spouses until their remarriage, should have the use and income of the property, and upon the "death" of the life tenants and the death or remarriage of the spouses, the remainder was devised to the children of Leonard and Harold and the natural-born children of Marie. I believe that the testator indicated an intent to treat all of the remaindermen equally and that no intention to the contrary is found in the will.

Until this case we have consistently held in Nebraska that the court, without much regard to canons of construction, would place itself in testator's position, ascertain his intent, and, if lawful, enforce it. Judge Sullivan stated the rule as follows in Weller v. Noffsinger, 57 Neb. 455, 77 N. W. 1075: "No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascer-

tained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional form of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it." This exact language was repeated in Krause v. Krause, 113 Neb. 22, 201 N. W. 670, and In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704, and in other cases. It is found in substance in every will construction in our reports, including Bodeman v. Cary, 152 Neb. 506, 41 N. W. 2d 797, which is controlling herein but which the majority opinion, because of the assumption of a false premise and some judicial surgery performed on the testator's intent, holds to be inapplicable.

I suggest further that the law followed is an anachronism. It is followed in this country only in those states which favor a stirpital distribution. Nebraska is not one of them. As we said in Douglas v. Cameron, 47 Neb. 358, 66 N. W. 430: " 'The rule of representation applies only from necessity, or where there are lineal heirs in different degrees.' " And again, in the same case at page 366, referring to an opinion by Chief Justice Shaw of Massachusetts: "The point, however, we desire to impress is that at the time he wrote, representation in America was not presumed, but was only applied where the statute affirmatively provided therefor." The reason for stirpital distribution in England and why it has not been generally adopted in America is discussed in that case.

An observation by the writer of an Annotation appearing in 16 A. L. R. 16 is illuminating: "It is a common remark that the decisions on the question as to when beneficiaries under a will are to take per capita, and when per stirpes, are in hopeless confusion. Analysis and comparison, however, show that their diver-

sity of result is due not to a difference as to the principles of construction, but as to the amount of evidence of a contrary intent which will overcome the general presumption that, *where the proportions in which the beneficiaries are to take are not specified, they take per capita.* The cause of this difference is due to the inclination of some courts—notably those of Connecticut, Georgia, Illinois, Indiana, Kentucky, New Jersey, and Pennsylvania—toward stirpital distribution wherever possible." (Italics supplied.)

What the majority opinion is doing is reading into the will words which simply are not there, which in nowise reflect the testator's intent, but on the contrary have the effect of destroying the very thought clearly expressed by the testator, especially so when the language used is given its generally accepted, literal, and grammatical meaning. In fact, the children of the testator themselves construed the will to create cross-remainders in the surviving children until the motion for rehearing. I quote from appellants' original brief: "Martin F. Gaughen's will (E1:2) made certain bequests and the major portion of his property, consisting of 240 acres of farm land in Dodge County, was devised as follows: Life estates were devised to testator's three children, Harold, Leonard, and Marie Mundy and their spouses, Mamie, Thelma, and Leo Mundy. *On the death of the last of the above life tenants,* the remainder was devised in the following manner: * * *." (Italics supplied.) They were correct in that interpretation, I believe, because there is nothing in the will which permits any enjoyment of the remainder interest prior to the demise of all the children, and the demise or remarriage of all the spouses, and any other interpretation does violence to the will itself.

Assuming, however, that the testator created a tenancy in common in his children as the majority opinion holds, then certainly section 76-117, R. R. S. 1943, must be followed. This section is section 17 of the Uniform

Property Act, and was intended to avoid exactly the thing the majority opinion creates. In 1939, when the Nebraska State Bar Association was considering the Uniform Property Act and what position to take with reference to it, an able real property lawyer reported on section 17 as follows: "Section 17 deals with the doctrine of cross remainders; and provides that when an estate is conveyed to two or more persons as tenants in common which is terminable at their deaths with an express remainder to the survivor of such persons or upon the death of all of the life tenants to another person, such conveyance creates cross limitations among the tenants in common so that the shares of those dying vest in the remaining tenants. We have no Nebraska statute and have had no Nebraska cases dealing with the rule of cross remainders. It suffices to say that a great deal of hair splitting and technicalities have been indulged in by the courts generally in dealing with this problem. It is bound to arise in Nebraska and it should be settled in such a manner as to avoid needless difficulties. This proposed section furnishes a statutory definition, clarifies the law, expresses a common sense view, does away with technicalities and settles the matter so that all may understand." 18 Nebraska Law Review, No. 4, p. 145.

The majority opinion brushes aside section 76-117, R. R. S. 1943, by stating that it is inapplicable here because the will effectively manifests an intent not to create cross-remainders between the life tenants. I believe that not only is an opposite intent manifested in the will, but that the very purpose of the statute has been ignored. It is my opinion that the Legislature intended to avoid the operation of the so-called English rule by enacting section 76-117, R. R. S. 1943, which provides that none of the remaindermen shall go into possession until all of the life estates have been terminated. In arriving at the conclusion that an opposite intent is manifested in the will, the majority rely upon

a rule which has never been in effect in this state and which if it were, the statute abolished. In effect, the rule is used to void the statute and thus destroy its meaning and effect.

The matter to be decided in this case is whether the remainder is to be distributed per capita or per stirpes. The majority do hold under their construction that the remainder devised to the natural-born children of Marie is to be distributed per capita to the children of Leonard and Harold in the event there is a failure of issue to Marie. I cannot draw this fine a distinction. I believe that the testator intended the entire remainder is to be distributed per capita, and not one-third per capita and two-thirds per stirpes.

I suggest further that there are other rules of construction in England and those states which lean to a stirpital distribution which would be more logical than adding words to a will if the testator's intent were not clear. Those constructions, however, would require a per capita distribution and not a stirpital one.

Under a bequest to children of several persons, the children take per capita and not per stirpes in the absence of words indicating a different intent. Abrey v. Newman (1853), 16 Beav. 431, 51 Eng. Rep. R. 845, 22 L. J. Ch. 627, 17 Jur. 153, 1 Wkly. Rep. 156. See the American and other English cases collected in 16 A. L. R. 61. If it were argued that this rule should not apply because of the language used in the instant will, I suggest that the cases do not bear out this assumption. As said in 3 Page on Wills (Lifetime Ed.), § 1082, p. 288: "It also applies where he describes them as separate classes, such as 'the children of' one named parent, and 'the children of' the other named parent," which incidentally is our exact situation. As suggested by Page in the same article, this is the rule even if the parents are related to the testator in unequal degrees.

There is in the majority opinion the suggestion that if the parents are named, and the children are not

named, a per stirpes distribution is intended. The reference is supported by single Connecticut and Alabama cases, both of which jurisdictions are states favoring stirpital distribution on the slightest pretext. I suggest the rule followed in most jurisdictions is otherwise. See the cases collected in 16 A. L. R. at page 31. To the same effect see 57 Am. Jur., Wills, § 1301, p. 861, which does not even mention the Connecticut and Alabama cases.

There is also the rule which is followed in both England and those states favoring a stirpital distribution that where there is a limitation over, the distribution is per capita and not per stirpes. A good illustration of these cases is the Kentucky case of Walters v. Crutcher, 15 B. Mon. 2, which I use because the Kentucky case of Dills v. Deavors, 266 S. W. 2d 788, has been cited in the majority opinion. That case holds the rule contended for in the majority opinion to be inapplicable where there is a limitation over in case of the death of any of the life tenants without children, since in such case an intention is apparent that all the children will take as one class. That is exactly the situation which we have in the instant case.

It will serve no purpose to extend this dissent further. I summarize by saying that to hold that the testator devised both a life estate and a remainder in thirds is to overlook these salient features of the will and the admitted facts appearing in the record: First, the testator designated the objects of his bounty by their relationship to their living ancestors, thereby indicating that they are not to take in his or her place or by representation, but that the reference to the ancestors is solely for the purpose of designating the beneficiary. Second, all the remaindermen are of the same degree of kindred to the deceased, and if all of the children of deceased be dead, they would take equally under the statute of descent in the absence of a will. Third, if the decedent had intended a stirpital distribution, he could have

easily stated so in his last will. He made no attempt to do so. Fourth, the testator on two occasions in the disputed paragraph decreed distribution on a share and share alike basis with nothing to be found in the entire will indicating an intent contrary to the generally accepted meaning of the quoted words. Fifth, the provisions of the will itself, wherein the testator devised the remainder "upon the death of said life tenants or the remarriage of my children's spouses," indicates that the whole remainder goes over together instead of in separate shares.

Our first opinion in this case, Gaughen v. Gaughen, 171 Neb. 763, 107 N. W. 2d 652, is the correct one and should be adhered to.